**MAKAREM & ASSOCIATES, APLC**
Ronald W. Makarem, Esq. (State Bar No. 180442)
Marni B. Folinsky, Esq. (State Bar No. 209880)
Jean-Paul Le Clercq, Esq., (State Bar No. 248818)
11601 Wilshire Boulevard, Suite 2440
Los Angeles, California  90025-1760
Phone: (310) 312-0299; Fax: (310) 312-0296


Michael H. Kim, Esq. (State Bar No. 200792)
**MICHAEL H. KIM , P.C.**
3699 Wilshire Boulevard, Suite 860
Los Angeles, California 90010
Phone: (213) 639-2900; Fax: (213) 639-2909

Attorneys for Plaintiffs BLAKE R. WILLIAMS and
PEGGY J. MCGREGOR, individually and
on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAKE R. WILLIAMS, an individual, and PEGGY J. McGREGOR, an individual, for themselves and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OBERON MEDIA, INC., a Delaware corporation; and DOES 1 through 10, Inclusive,<br><br>Defendants. | CASE NO. CV 09-8764-JFW (AGRx)<br>[Assigned to Hon. John F. Walter]<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S:**<br>   **1. RULE 12(b)(6) MOTION TO DISMISS;**<br>   **2. RULE 12(e) MOTION FOR MORE DEFINITE STATEMENT;**<br>   **3. RULE 12(f) MOTION TO STRIKE.**<br><br>Date:   March 1, 2010<br>Time:   1:30 p.m.<br>Dept:   16 |

Plaintiffs respectfully submit their Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss, Rule 12(e) Motion for a More Definite Statement, and Rule 12(f) Motion to Strike.

Printed on recycled paper

- 1 -

# **TABLE OF CONTENTS**

I.     Introduction..................................................................... 1

II.    Factual Background............................................................. 1

III.   Standard....................................................................... 3

IV.    Plaintiffs' Third Cause Of Action For Unjust Enrichment Is Not At Issue
       In This Motion................................................................ 4

V.     Plaintiffs Have Validly Pleaded A Claim That Defendant's Early
       Termination Fee Is An Unlawful Penalty....................................... 4

       A.    Plaintiffs identified the basis for this cause of action................ 4

       B.    Plaintiffs have standing to pursue this claim.......................... 5

             1.    Defendant fails to cite authority that Plaintiffs must have
                   paid the ETF in order to be injured by it....................... 5

             2.    Plaintiffs were injured by the ETF.............................. 6

       C.    Defendant's contention that the ETF is not an illegal liquidated
             damages provision is both improper argument and lacks merit......... 8

             1.    This Court should not determine whether Defendant's ETF
                   is an illegal liquidated damages provision in a Rule 12(b)(6)
                   motion to dismiss............................................... 8

             2.    Defendant's ETF is a liquidated damages clause................. 9

VI.    Plaintiffs Have Validly Pleaded A Claim For Unfair Competition Under
       Section 17200................................................................ 11

       A.    Plaintiffs' section 17200 claim can be based on any or all of the
             three prongs of the UCL: unlawful, unfair, or fraudulent............. 11

       B.    A violation of another law or statute is not required for state a
             claim under the "unfair" and "fraudulent prongs of section 17200.... 12

C.   Plaintiffs have stated facts sufficient to show unfair or fraudulent conduct................................................................... 14

VII.  Plaintiffs Have Validly State A Cause Of Action For Breach Of Contract.. 15

VIII. Plaintiff Has Alleged All That Is Required For Plaintiff McGregor......... 16

IX.  Defendant Has Failed To Satisfy Its Burden Of Showing That This Class Cannot Be Certified............................................................... 17

A.   Defendant's contention that a section 17200 claim is not available to non-California residents lacks merit.................................. 19

X.   Alternatively, Leave To Amend Should Be Granted.......................... 21

XI.  Conclusion ............................................................................ 22

# TABLE OF AUTHORITIES

**AUTHORITIES**                                                                    **PAGE**

*Allen v. Smith*
    94 Cal. App. 4th 1270, 1278 (2002)……………………………………..  6,10

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
    7 Cal. 4th 503 (1994)……………………………………………………..  15

*Beliveau v. Caras*
    873 F. Supp. 1393, 1395 (C.D. Cal 1995)………………………………  8

*Birdsong v. Apple. Inc..*
    590 F.3d 955(9th Cir. 2009)……………………………………………..  14

*Blank v. Borden*
    11 Ca1. 3d 963, 971(1974)………………………………………………..  9

*Berryman v. Merit Property Management. Inc*
    152 Cal.App.4th 1544, 1554 (2007)……………………………………  11

*Camacho v. Automobile Club of Southern California.*
    142 Cal. App. 4th 1394 (2006)………………………………………….  14-15

*Conley v. Gibson*
    355 U.S. 41, 45-56 (1957)……………………………………………….  3,4,8

*De La Cruz v. Tormey*
    582 F.2d 45, 48 (9th Cir. 1978)………………………………………….  8

*Fox Hollow of Turlock Owners' Association v. Sinclair*
    2007 WL 987873, at *5 (E.D. Cal. Mar. 30, 2007)……………………  12

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
    528 U.S. 167, 180-81 (2000)…………………………………………….  5,7

*Ghirardo v. Antoniolu*
    8 Cal. 4th 791, 802 (1994)……………………………………………….  9

*Hearn v. R.J. Reynolds Tobacco Co.*
    279 F. Supp. 2d 1096, 1101 (D. Az. 2003)……………………………  8

*Hitz v. First Interstate Bank*
    38 Cal. App. 4th 274, 278 (1995)………………………………………  10

*Hutchison v. AT&T Internet Services, Inc.*
    *4 2009 WL 1726344 (C.D. Cal. May 5, 2009)………………………  10

*In re Marriage of Frahm*
    45 Cal. App. 4th 536, 543(1996)……………………………………….  9

*Jacobs v. Citibank, N.A.,*
   92 A.D.2d 786, 787, 459 N.Y.S.2d 781, 782 (N.Y. App. Div. 1983)... 10

*Johnson v. Robinson*
   2009 WL 747231, at * 4 (E.D. Cal. Mar. 20, 2009).................... 5

*Lazar v. Hertz Corp.*
   69 Cal. App. 4th 1494, 1505 (1999)...................................... 12

*Lectrodrver v. SeoulBank*
   77 Cal. App. 4th 723, 726 (2000). ...................................... 3

*London v. New Albertson's Inc..*
   2008 WL 4492642, at *1 (S.D. Cal. Sept. 30, 2008)................... 13

*McKell v. Washington Mutual. Inc.*
   142 Cal. App. 4th 1457, 1473 (2006)................................... 12, 16

*Mendoza v. Countrywide Home Loans. Inc..*
   2009 WL 4706350, at *3 (N.D. Cal. Dec. 3, 2009).................. 16

*Miller v. Nissan Motor Acceptance Corp.*
   362 F.3d 209, 221-24 (3d. Cir. 2004)................................... 6

*Moore v. City of Costa Mesa*
   886 F.2d 260, 262 (9th Cir. 1989)..................................... 3

*Morris v. Redwood Empire Bancorp*
   128 Cal. App. 4th 1305, 1314. 971(2005)............................. 9

*NL Industries. Inc. v. Kaplan*
   792 F.2d 896, 898 (9th Cir. 1986)..................................... 3

*Puentes v. Wells Fargo Home Mortg.. Inc*
   160 Cal.App.4th 638, 645 (2008)...................................... 13

*RDF Media Ltd. v. Fox Broadcasting Co..*
   372 F.Supp.2d 556, 561 (C.D.Cal.2005)................................ 17

*Ridgley v. Topa Thrift & Loan Assn*
   17 Cal. 4th 970, 977 (1998)........................................... 8,10

*Sanders v. Apple Inc..*
   2009 WL 150950 *9 (N.D.Cal. Jan.21, 2009)......................... 17

*Searle v. Wynhdam Int'l. Inc..*
   102 Cal.App.4th 1327, 1334 (2002)................................... 15

*SEC v. Cross Fin'l Services, Inc.*
   908 F.Supp. 718, 726-727 (C.D. Cal 1995)............................ 8

*Semegen v. Weidner.*
     780 F.2d 727, 731 (9th Cir. 1985)...................................  15

*Sirota v. Solitron Devices. Inc..*
     673 F.2d 566, 570-72 (2d Cir.1982)...............................  17

*Svbersound Records. Inc. v. UAV Corp*
     517 F.3d 1137, 1152 (9th Cir. 2008)..............................  13

*Shum v. Intel Corp.*
     630 F.Supp.2d 1063, 1073  (N.D.Cal. 200)......................  3

*Smith v. State Farm Mutual Automobile Ins. Co..*
     93 Cal. App. 4th 700, 719 (2001).................................  14

*United States v. White*
     893 F.Supp. 1423, 1428 (C.D. Cal 1995)........................  8

*Weber, Lipshie & Co. v. Christian*
     52 Cal. App. 4th 645, 656 (1997)................................  9

## STATUTES

*California Business & Professions Code sections 17500, et seq*..............  13

*California Code of Civil Procedure §348* ...........................................  5

*California's Penal Code sections 484 and 486*.................................  12

*California Civil Code section 1671*...............................................  4,5,8,11

*Federal Rule of Civil Procedure 8(a)(2)*.........................................  4

*Truth in Lending Act, 15 U.S.C.A section 1667b(b)*...........................  6

     *U.S.C. sections 1341 and 1344*................................................  12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Introduction.**

Defendant seeks to dismiss a majority of Plaintiffs' causes of action on the basis that they are not clear enough, yet fail to provide any case law suggesting dismissal is appropriate in that scenario.  Further, case law states a party to a contract has the right to cancel a contract without being forced to pay a "penalty."  Here, Plaintiffs' have standing to challenge the validity of Defendant's Early Termination Fee ("ETF") because they were forced to stay in the contract because of its existence.

Moreover, a claim should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim.  Therefore, Defendant's contention that its ETF is a valid clause is both inappropriate for determination in a 12(b)(6) motion and lacks merit, as the ETF constitutes an unreasonable penalty and not alternative form of performance.

Plaintiff has also properly alleged a violation of 17200 because Defendant's business practices are "unlawful, unfair and deceptive."  Defendant has also failed to satisfy its burden that a class cannot be certified in this case and, therefore, class action allegations should not be stricken.  Lastly, Plaintiffs' section 17200 claim is appropriate for nationwide class certification.

Alternatively, any deficiencies in the Complaint may be remedied via amendment and, accordingly, Plaintiffs should be given leave to amend.

**II.    Factual Background.**

This lawsuit is about Defendant's unlawful, unfair, and deceptive business practices associated with distribution of casual, downloadable video games. [Complaint, ¶¶ 1-2].  In order to purchase games a user may do one of two things: (1) they may purchase a single game; or (2) to entice users to enroll in long-term purchase agreements, Defendant utilizes its "GameSaver" program, whereby a user may purchase games at a discount, provided they pay a month subscription fee. [Complaint, ¶¶ 11-14].  Plaintiffs allege that Defendants commit unfair business

1   practices in both instances, each of which have caused injury to named Plaintiffs and

2   putative class members.

3        With respect to a single game transaction, Plaintiffs allege that Defendants

4   commit a number of unlawful, unfair, and deceptive practices that cause harm to

5   users.  Plaintiffs have alleged that when an individual attempts to purchase a single

6   game, Defendants will enroll the user into a long-term GameSaver membership

7   agreement without the user's consent. [Complaint, ¶¶ 15, 23, 26].  Both named

8   Plaintiffs had this happen to them. [Complaint, ¶¶ 22-26].  Plaintiffs have also

9   alleged that, even when an individual knowingly enrolls in the GameSaver program,

10  users will be double-billed for their single game purchase. [Complaint, ¶¶ 4, 20].

11  Defendant will also fraudulently charge fees not disclosed at the point of sale,

12  including a "Foreign Transaction Fee." [Complaint, ¶¶ 4, 19].

13       With respect to enrollment in Defendant's "GameSaver" membership,

14  Plaintiffs allege that Defendant's business setup is such that it is unreasonably

15  difficult for a user to cancel his or her membership. [Complaint, ¶ 16].  In many

16  cases, users are forced to cancel credit cards or bank accounts in order to prevent

17  Defendant from continuing to charge them fees.  This difficult cancellation process is

18  made all the more unfair by virtue of the fact that once the term of a user's

19  GameSaver membership ends that user then continues membership with the program

20  on a "month-to-month" basis." [Motion, p. 1].

21       Plaintiffs have also alleged that Defendant has implemented an illegal

22  liquidated damages provision, or Early Termination Fee ("ETF"), that effectively

23  prevents users from cancelling the membership. [Complaint, ¶¶ 16, 17].  By the

24  terms of the ETF, a user who "cancels" their membership must nonetheless pay for

25  all remaining months of the membership at the time of "cancellation." [Complaint, ¶

26  16].  Plaintiffs have alleged that this constitutes an illegal liquidated damages clause

27  because it is not reasonably related to any damages Defendant suffers due to the

28

GameSaver membership cancellation, and damages caused by any cancellation would not be difficult to determine. [Complaint, ¶¶ 17, 35-42].

However, even presuming that a user has knowingly signed up for the GameSaver program, Plaintiffs further allege that Defendant does not satisfy all terms of the GameSaver agreement.  Plaintiffs allege that Defendant continues to charge undisclosed fees, fails to provide "free" games and double bills members for difference transactions. [Complaint, ¶¶ 11-20, 54-60].

Plaintiffs have suffered monetary losses and the threat of monetary losses because of Defendants' unfair business practices.  Plaintiff Williams was signed up for a second GameSaver membership without her consent, the duration of which was to end in February, 2010. [Complaint, ¶ 22-24].  Because of the illegal ETF and Defendant's business setup, Plaintiff was effectively prevented from cancelling her GameSaver membership. [Complaint, ¶¶ 22-24].  Furthermore, Plaintiff Williams was charged undisclosed fees and failed to receive free games.

Plaintiff McGregor attempted to purchase a single game in 2008, but was unknowingly, and without her consent, signed up for Defendant's GameSaver program. [Complaint, ¶ 26].  Because of the illegal ETF and Defendant's business setup, Plaintiff was effectively prevented from cancelling her GameSaver membership [Complaint, ¶ 26].

**III.    Standard.**

On a motion to dismiss for failure to state a claim, all material allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Moore v. City of Costa Mesa,* 886 F.2d 260, 262 (9th Cir. 1989) (citing *Conley v. Gibson,* 355 U.S. 41, 45-56 (1957)).

**IV.    Plaintiffs' Third Cause Of Action For Unjust Enrichment Is Not At Issue In This Motion.**

Here, Defendant does not object to the Third Cause of Action for Unjust Enrichment, which is "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). Unjust enrichment returns that which defendants obtained from plaintiff as a result of their wrongful conduct. *See, Shum v. Intel Corp.*, 630 F.Supp.2d 1063, 1073 (N.D.Cal. 200) Thus, Defendant acknowledges, and it is uncontested that unauthorized charges to credit cards, double-billing, hidden charges, failing to deliver promised goods, and enforcing an illegal penalty are "wrongful acts" on which an "unjust enrichment" claim properly stands.

**V.    Plaintiffs Have Validly Pleaded A Claim That Defendant's Early Termination Fee Is An Unlawful Penalty.**

Plaintiffs have alleged a valid claim for violation of the prohibition against unreasonable liquidated damages clauses, via their first cause of action.  Each of Defendant's arguments lack merit because: (1) Plaintiffs have identified the basis for this cause of action; (2) Plaintiffs do not lack standing to assert this cause of action; (3) Plaintiffs have properly alleged that Defendant's ETF is an unlawful liquidated damages clause; and (4) this Court should not decide whether Defendant's ETF is valid in a 12(b)(6) motion to dismiss if Plaintiffs have properly alleged it as an illegal liquidated damages clause.

**A.    Plaintiffs identified the basis for this cause of action.**

Defendant has failed to identify one case stating that Plaintiffs must specifically identify the statute upon which their cause of action rests, and Defendant's motion should be denied.  Furthermore, Plaintiffs have identified the basis of this cause of action as associated with Defendant's illegal ETF.  Under Federal law, all that Federal Rule of Civil Procedure 8(a)(2) requires is "a short and plain statement of the claim that will give the defendant fair notice of what the

plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds). Plaintiff has provided such a plain statement and fair notice. Plaintiff stated that "Defendant's ETF constitutes an unlawful penalty . . ." [Complaint, ¶ 36].

Further, Plaintiff stated that this cause of action was based on the fact that the ETF did not represent a "reasonable measure or approximation of the anticipated or actual loss from a breach of the GameSaver subscription." [Complaint, ¶ 39]. Additionally, this cause of action incorporated all other paragraphs in Plaintiffs' Complaint, in which Plaintiff identified the ETF as an unlawful penalty. [Complaint, ¶¶ 17, 30].

Defendant acknowledges that this cause of action is directly associated with its ETF and that Plaintiffs' allegation is that it constitutes an illegal liquidated damages clause otherwise prohibited by California Civil Code section 1671. [Motion, pp. 9-11]. Defendant cites no case law suggesting that this is not sufficient information to properly inform Defendant of the allegation to which it must respond. In fact, the sole case Defendant cites to the contrary is a non-reported district court opinion, *Johnson v. Robinson*, 2009 WL 747231, at * 4 (E.D. Cal. Mar. 20, 2009), associated with a prisoner bringing a civil action in *forma pauperis*. However, even the *Johnson* Court noted that, while the prisoner had not specifically identified the statute under which he was seeking relief, he did possibly provide proper notice simply by virtue of the header of the cause of action. *Id.* at 4.

**B.    Plaintiffs have standing to pursue this claim.**

      **1.    Defendant fails to cite authority that Plaintiffs must have paid the ETF in order to be injured by it.**

Aside from failing to explain the legal standard required to show standing in Federal court, Defendant has failed to provide case law stating that Plaintiffs must have actually paid the ETF in order to be injured by it. However, California Civil Code section 1671 does not state that a liquidated damage must have been paid for a

party to attack its validity. *See* C.C.C. 1671 (stating that a liquidated damage clause in a contract such as the GameSaver program "**is void**" unless the parties fix the damages associated with a breach pursuant to anticipated damages which would be difficult to calculate).

The first case cited by Defendant, *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000), simply reiterates that in order to have Article III standing a plaintiff must suffer "injury in fact;" that is the injury must be "concrete and particularized and (b) actual or imminent, not conjectural or hypothetical . . .." It does not state that a plaintiff must in fact pay the ETF in order to be injured by it.

The second case cited by Defendant, *Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209, 221-24 (3d. Cir. 2004), is a factually dissimilar case dealing with a lease of personal property (a vehicle lease), that is specifically covered by the Truth in Lending Act, 15 U.S.C.A section 1667b(b), which is inapplicable here. Additionally, the amount that was eventually agreed upon and paid by the parties was an amount that was not specified in the lease (i.e. it was pursuant to some other agreement not found in the lease). *Id.* at 212-14. This is dissimilar to the present case where Plaintiffs are effectively prevented from cancelling their GameSaver membership early because of Defendant's ETF. Of note is that Plaintiffs also were forced to pay the exact same amount as what was required under the ETF. Neither of these two situations were discussed in *Miller*.

### 2.   Plaintiffs were injured by the ETF.

Defendant ignores Plaintiffs' allegations showing that they were, in fact, injured by Defendant's ETF. In this case, Plaintiffs have alleged that they were effectively prevented from terminating their membership because of the ETF, thereby incurring more fees by remaining members. [Complaint, ¶¶ 16, 24, 26]. Plaintiffs were injured by being forced to remain in a contract that they wanted to get out of.

Parties to a contract have the right to cancel a contract without being forced to pay a "penalty." *See, e.g., Allen v. Smith*, 94 Cal. App. 4th 1270, 1278 (2002) (reiterating the standard that "[a] contractual provision imposing a 'penalty'" on a party who cancels a contract "is ineffective, and [that] the wronged party can collect only the actual damages sustained."). All a defendant is legally entitled to in the instance of a breach are the damages it has suffered because of the breach. Yet here, Defendant effectively locks Plaintiffs and other class members into a contract that provides absolutely no method for early cancellation and penalizes them if they attempt to cancel the contract. Both Plaintiffs have alleged that they wished to cancel their memberships early, but were prevented from doing so by the ETF and, accordingly, were injured by the ETF's existence.

Furthermore, and as stated above, Plaintiffs suffered the exact same monetary injury pursuant to the ETF by being forced to remain in the GameSaver membership as they would have suffered had they attempted to cancel their membership. In other words, because of the ETF, Plaintiffs were forced to pay the amount required by the ETF.

Additionally, at the time of the filing of this Complaint, Plaintiff Williams was still signed up for Defendant's GameSaver program and unable to cancel her membership because of Defendant's illegal ETF because it would required her to pay all remaining months on the membership. [Complaint, ¶¶ 22-24]. As shown via *Friends of the Earth, Inc.*, 528 U.S. at 180, an "actual or imminent" injury is sufficient to provide a plaintiff with Article III standing. Stated another way, "fac[ing] the threat of future injury due to illegal conduct ongoing at the time of suit" is sufficient for a plaintiff to have standing at the time he or she files suit. *Id.* at 185. At the time of the filing of this lawsuit, harm to Plaintiff Williams as a result of Defendant's ETF was "imminent," as a cancelation of the GameSaver would have caused her to pay the entirety of her membership. Therefore, both Plaintiffs have standing to address this clause.

**C.      Defendant's contention that the ETF is not an illegal liquidated damages provision is both improper argument and lacks merit.**

        **1.      This Court should not determine whether Defendant's ETF is an illegal liquidated damages provision in a Rule 12(b)(6) motion to dismiss.**

This Court should not assess the actual validity of Defendant's ETF in ruling on a (12)(b)(6) motion to dismiss provided that Plaintiffs have adequately pleaded the ETF as an illegal liquidated damages provision.  To grant such a motion, this Court must accept Plaintiffs' allegations as true, and then only upon those allegations determine that Plaintiffs *"unequivocally"* have no legal remedy. *See Conley*, 355 US at 45-46; *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978); *see also SEC v. Cross Fin'l Services, Inc.*, 908 F.Supp. 718, 726-727 (C.D. Cal 1995); *see also Beliveau v. Caras*, 873 F. Supp. 1393, 1395 (C.D. Cal 1995); *see also United States v. White*, 893 F.Supp. 1423, 1428 (C.D. Cal 1995).

Stated another way, "[a] suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1101 (D. Az. 2003).  In the present case Plaintiff has alleged that Defendant's ETF is an illegal liquidated damages provision. [Complaint, ¶ 39].  Pursuant to California Civil Code section 1671, a damage provision such as the one at issue in this lawsuit is presumed to be a penalty and "void" unless the party seeking to enforce the provision can prove that the amount is tied to its actual damages which are "impracticable or extremely difficult" to fix. C.C.C. § 1671.

Plaintiffs have properly alleged that the ETF is not based on any damages anticipated or sustained by Defendant pursuant to any possible breach, such that it would be illegal. *See Ridgley v. Topa Thirft & Loan Assn.*, 17 Cal. 4th 970, 977 (1998)(holding that a "contractual clause purporting to predetermine damages 'must be construed as a penalty'" if it does not "represent the result of a reasonable

endeavor by the parties to estimate a fair average compensation for any loss that may be sustained" by a breach of the contract).  Therefore, Defendant's contention that its ETF is actually an "accelerated performance provision" is inappropriate and should not be considered by this Court at this time, as such an argument is more appropriate for a Rule 56 motion for summary judgment.

## 2.    Defendant's ETF is a liquidated damages clause.

Defendant's ETF is an illegal liquidated damages clause.  The ETF is only implicated when a user wishes to breach the GameSaver membership by cancelling early, meaning that the ETF defines the "damages" Defendant is to incur by such a breach.  The fact that Defendant wishes to call it something other than an ETF or liquidated damage is irrelevant, as the Court must "look to the substance in determining its meaning." *Weber, Lipshie & Co. v. Christian*, 52 Cal. App. 4th 645, 656 (1997); *see Ghirardo v. Antoniolu*, 8 Cal. 4th 791, 802 (1994) (addressing difficulty of categorizing settlement note as a loan or as a modification of a credit sale); *see In re Marriage of Frahm*, 45 Cal. App. 4th 536, 543(1996) (addressing difficulty of categorizing severance payment as individual or community property).

In determining whether the payment of a fee is an alternative means of performance, court considers whether, at the inception of the contract, the contract offered the terminating party "a 'realistic and rational choice in the future' between two alternative performances." *Blank v. Borden* 11 Ca1. 3d 963, 971(1974); *see also Morris v. Redwood Empire Bancorp* 128 Cal. App. 4th 1305, 1314. 971(2005).  The terms of the "alternative method for performance" must "in no sense contemplate a 'default' or 'breach' of an obligation." *Blank*, 11 Ca1. 3d at 970.  If the conduct triggering the payment "is "in some manner [a] breach [of] the contract," then it must constitute a liquidated damage provision and not an alternative method of performance. *Morris*, 128 Cal. App. 4th at 1314.

In the present case, as stated above, the ETF is only implicated when a user wishes to cancel their membership to the GameSaver early (i.e. when they wish to

breach their agreement with Defendant).  Until a user breaches their long-term membership with Defendant, that user will not have to pay the ETF.[1]  As also stated above, a user must be able to cancel his or her GameSaver membership with Defendant without incurring a "penalty." *Allen*, 94 Cal. App. 4th at 1278.

This is similar to *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274, 278 (1995), where the court determined that a "'late' fee assessed against customers who did not make monthly payments on time, and an 'overlimit' fee charged to customers whose account balances in a given month exceeded their credit limits" were illegal liquidated damage provisions.   It is also similar to *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970 (1998), where the court found that a prepayment interest fee equal to six months of interest that was part of a home loan, which was only applied if a borrower was more than 15 days late on any payments, was an illegal liquidated damage clause.

Neither of the cases cited by Defendant suggest that its ETF is an appropriate alternative performance clause.  *Hutchison v. AT&T Internet Services, Inc.*, at *4 2009 WL 1726344 (C.D. Cal. May 5, 2009), a district court ruling, dealt with a flat $200 penalty that would be assessed against a party if that party breached its internet service before the term expired.  However, not only did this case deal with a flat fee applied upon breach, but it was also a decision made during a motion for summary judgment, not at the pleading stage. *Id.* at *1.  Such a determination was not made at the pleading stage.

The second case cited by Defendant, *Jacobs v. Citibank, N.A.*, 92 A.D.2d 786, 787, 459 N.Y.S.2d 781, 782 (N.Y. App. Div. 1983), is a New York case, also based on a motion for summary judgment, which determined that an over-draft on a bank

---

[1] If the court accepts judicial notice of the Contract submitted by Defendant, this Court should review the "Cancellation" section on page 5, which indicates that "cancellation" is a member's "sole right and remedy" against Defendant, and that "cancellation" is what causes a member to become liable for all "remaining months" on the contract.

1  account is not a breach and, therefore, any charges applied because of that over-draft

2  cannot be deemed a "penalty." This case is wholly inconsistent with the present

3  case, and should be given no weight.

4  Accordingly, Defendant's ETF is only implicated when a user attempts to

5  breach the contract by ending his or her membership early. Therefore, it constitutes

6  a breach "penalty," and since it has no reasonable relationship to any damages

7  incurred by Defendant because of the breach, it is unlawful pursuant to California

8  Civil Code section 1671.

9  **VI.   Plaintiffs Have Validly Pleaded A Claim For Unfair Competition Under**

10  **Section 17200.**

11  Even after conceding that making unauthorized charges to Class members'

12  credit cards, double-billing, hidden charges, failing to deliver promised goods, and

13  enforcing an illegal penalty are "wrongful acts," Defendant argues that Plaintiffs

14  have "fail[ed] to allege a valid claim under §17200." Defendant cites to three

15  reasons, none of which apply here.

16  **A.   Plaintiffs' section 17200 claim can be based on any or all of the**

17  **three prongs of the UCL: unlawful, unfair, or fraudulent.**

18  Defendant ignores both Plaintiffs' Complaint and applicable case law in

19  arguing that Plaintiffs have not properly alleged a section 17200 claim by failing to

20  identify which prong of the sections "unlawful, unfair or fraudulent" prohibition is

21  being utilized. However, throughout Plaintiffs' Complaint it is alleged that

22  Defendant's business practices are "unlawful, unfair **and** deceptive." [Complaint, ¶¶

23  1, 15, 21, 43-47].

24  This is an entirely appropriate manner to plead a section 17200 claim. As

25  stated in *Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1544,

26  1554 (2007), "[a]n act can be alleged to violate *any or all* of the three prongs of the

27  UCL-unlawful, unfair, or fraudulent." (emphasis added). None of the cases cited by

28  Defendant suggest otherwise. Defendant's reliance Johnson is misplaced, for the

1    reasons stated above.  Additionally, *Fox Hollow of Turlock Owners' Association v.*

2    *Sinclair*, 2007 WL 987873, at *5 (E.D. Cal. Mar. 30, 2007), the district court simply

3    stated that the plaintiffs, using section 17200 for three different causes of action,

4    failed to explain whether the causes of action were based on unlawfulness,

5    unfairness, or fraud.  The case does not identify what was actually pleaded, thus, this

6    case provides little to no guidance.

7    **B.    A violation of another law or statute is not required for state a**

8    **claim under the "unfair" and "fraudulent prongs of section 17200.**

9    Defendant argues that the UCL claim must be "dismissed" because "the

10    Complaint does not allege that Oberon violated any specific statute(s) or law(s)."

11    This argument would deserve some consideration if Plaintiffs were only pursuing the

12    "unlawful" prong of the Unfair Competition Law.  Under its "unlawful" prong, "the

13    UCL borrows violations of other laws ... and makes those unlawful practices

14    actionable under the UCL."  *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505

15    (1999). Thus, a violation of another law is a predicate for stating a cause of action

16    under the UCL's unlawful prong.

17    However, in this case, Plaintiffs are alleging that Defendant also engaged in

18    "unfair" and "fraudulent" business practices under the second and third prongs of the

19    Unfair Competition Law.  Neither the "unfair" prong nor the "fraudulent" conduct

20    requires a violation of another law, and can be asserted as a "standalone" claim based

21    on an alleged act that "violates established public policy or if it is immoral, unethical,

22    oppressive or unscrupulous and causes injury to consumers which outweighs its

23    benefits." *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).

24    Defendant's business practices of making unauthorized charges to consumer's

25    credit cards for a game subscription which they never ordered or authorized and

26    double-billing consumers without their knowledge and consent violate 18 U.S.C.

27    sections 1341 and 1344 and California's Penal Code sections 484 and 486.

28    Defendant's failure to deliver free games as promised under the GameSaver program

PLAINTIFFS' OPPOSITION TO DEFTS' MOTION TO DISMISS/STRIKE

constitutes breach of contract.  A breach of contract claim may form the predicate of a UCL claim, provided it also constitutes conduct that is "unlawful, or unfair, or fraudulent." *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008).   Defendant's business practice of concealing the fact that any purchase from Defendant will result in the charge of additional fees for foreign currency transaction violates California Business & Professions Code sections 17500, et seq.

Lastly, Defendant's business practice of imposing an unlawful penalty for early contract cancellation violates California Civil Code sections 1670 and 1671. *See also, Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal. 4th 970, 977; *Vincent v. Grayson*, 30 Cal. App. 3d 899, 911 (1973).

None of the cases cited by Defendant states that Plaintiffs' section 17200 must be dismissed for failing to specifically allege the law or statute which Defendant's practices violate.  In fact, each case relied upon by Defendant involved a section 17200 claim based solely on one distinct "unlawful" practice which was not found to be unlawful.

In *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) the unfair competition that was alleged relied solely on contract law, and the contract in which the alleged misrepresentations were made occurred between non-parties. *Webb v. Smart Document Solutions*, 499 F.3d 1078, 1082-86 (9th Cir. 2007) simply reiterates that multiple different prongs of a section 17200 claim, but since plaintiffs' claim was based solely on alleged HIPAA violations, plaintiffs failure to show a HIPAA violation resulted in dismissal.

Similarly, *London v, New Albertson's Inc.*, 2008 WL 4492642, at *1 (S.D. Cal. Sept. 30, 2008) dealt with a case where plaintiff pleaded section 17200 based solely on invasion of privacy.  However, since plaintiff specifically alleged in the complaint that all private information had been redacted, his underlying invasion of privacy claim lacked merit. *Id.* at *4.

In *Birdsong v. Apple, Inc.*, 590 F.3d 955(9th Cir. 2009), plaintiff brought suit over the IPOD claiming that *if* it was played too loud it *could possibly* cause hearing loss, and therefore sued for breach of warrantability.   However, plaintiff failed to plead that he or any other class members had any hearing loss, or were in imminent threat of having any hearing loss and, therefore, the 17200 claim was dismissed. *Id.* at 960-61.  Similar to *Birdsong*, in *Warth v. Seldin*, 422 U.S. 490, 502-3 (1975), the plaintiffs' case was dismissed then they were unable to show any causal connection between a city's zoning plan and their alleged injuries.  None of these cases stand for Defendant's proposition that failing to specifically allege the law or statute which a defendant's conduct violates is grounds for dismissal of a section 17200 claim.

## C.     Plaintiffs have stated facts sufficient to show unfair or fraudulent conduct.

Once again, Defendant ignores all of the allegations in Plaintiffs' Complaint identifying Defendant's unfair and fraudulent conduct.  Each of the acts of which Plaintiffs Complaint are both identified in as unlawful, unfair and fraudulent. [Complaint, ¶¶ 43-47].  Each of the acts is sufficient to form the basis of a section 17200 cause of action.

The breadth of conduct that section 17200 is in place to prevent is well-document.  In *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001) the court held that a UCL action alleging injury to a consumer, an "unfair" business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.   In *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394 (2006), the court took a different approach to defining "unfair" in consumer cases. The court determined whether a business practice is unfair by analyzing three factors: "(1) The consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to

consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Id.* at 1403.

In fact, the court in *Searle v. Wynhdam Int'l, Inc.*, 102 Cal.App.4[th] 1327, 1334 (2002), a case cited by Defendant,[2] acknowledged that the standard created by section 17200 "is **intentionally broad**, thus allowing courts maximum discretion to prohibit new schemes to defraud." (emphasis added).

Under either of the above definitions, the following practices are properly alleged as "unfair": (1) making unauthorized charges to consumer's credit cards for a game subscription which they never ordered or authorized; (2) imposing an unlawful liquidated damages provision for early contract cancellation; (3) failing to deliver free games as promised under the GameSaver program; (4) failing to disclose additional fees that will be incurred to purchase from Defendant; and (5) double billing practices.

In other words, Plaintiffs have alleged Defendant's conduct with sufficient specificity such that Defendant has been given "notice of the particular misconduct which is alleged to constitute the fraud charged so that [it] can defendant against the charge . . ..", and Defendant's motion should be dismissed. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

**VII.   Plaintiffs Have Validly State A Cause Of Action For Breach Of Contract.**

Defendant misconstrues the pleading requirements for a Breach of Contract claim.  In California, a claim for breach of contract:

---

[2] Defendant cites to *Searle* for the proposition that Plaintiffs have no claim because they had a choice in whether to become an Oberon customer or GameSaver member. [Motion, p. 14].  To begin, Plaintiffs have alleged that they had no choice in becoming GameSaver members. [Complaint, ¶¶ 23,26].  Further, *Searle* does not make such a sweeping statement, rather finding in favor of defendant because the destination of hotel gratuities is not something that needs to be disclosed to guests, and all material terms associated with mini-bar purchases are disclosed. *Searle*, 102 Cal.App.4th at 1334.

**may be pleaded** either by its terms-set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference-or **by its legal effect**. [Citation Omitted] In order to plead a contract by its legal effect, plaintiff must "allege the substance of its relevant terms.

*McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1489 (2006)(emphasis added). In other words, Plaintiffs must simply apprise Defendant of the legal effect game purchases or the GameSaver membership has on its users. This understanding of the pleading requirements is reiterated by cases relied upon by Defendant. See *Mendoza v. Countrywide Home Loans, Inc.* 2009 WL 4706350, at *3 (N.D. Cal. Dec. 3, 2009)(stating that a complaint must allege the specific terms of the contracts that have been breached"). Plaintiff has provided Defendant, and this Court, with these material terms. [Complaint, ¶¶ 11-19, 54-60].

Further, the contract at issue is printed on page four of the Complaint. All transactions with respect to Oberon games and the GameSaver subscription are done online. In order to either buy a game or sign up for the GameSaver subscription, customers must first find a website selling Oberon games online. After customers access the designated website and find the game they want, they are led to a page that has the "Select Purchase Option" that essentially looks like the one that is copied to the Complaint. Customers then enters into one of the contracts, 12-month GameSaver, 6-month GameSaver, 2-month GameSaver, or purchase the game at full price, by clicking the option. The terms of each package are spelled out on this "Select Purchase Option" page as shown in the Complaint. Therefore, Defendant's motion should be denied.

## VIII. Plaintiff Has Alleged All That Is Required For Plaintiff McGregor.

Defendant attempts to utilize Rule 12(e) "more definitive statement" option to perform pre-certification discover. Specifically, Defendant claims to need the following information to assess Plaintiffs' class action claims: Ms. McGregor's (1) user ID (2) email address; and (3) the approximate date on which she was allegedly

1    enrolled in the GameSaver; or the website(s) from which she purchased her games.

2    [Motion, p.16].

3        However, Plaintiff is not required to provide this information in a complaint,

4    and Defendant has failed to cite any authority that states otherwise.[3]  Plaintiffs have

5    pleaded all information concerning Plaintiff McGregor that is required for purposes

6    of a proper complaint. [Complaint, ¶¶ 7, 26].  Therefore, any additional information

7    Defendant seeks may gained through the ordinary discovery process.

8    **IX.   Defendant Has Failed To Satisfy Its Burden Of Showing That This Class**

9            **Cannot Be Certified.**

10       Class certification is generally not decided at the pleading stage of a lawsuit,

11   and Defendant has not satisfied its burden to do so here. It is true that "[w]here the

12   complaint demonstrates that a class action cannot be maintained on the facts alleged,

13   a defendant may move to strike class allegations prior to discovery." *Sanders v.*

14   *Apple Inc.,* 2009 WL 150950 *9 (N.D.Cal. Jan.21, 2009). However, before granting

15   the motion, defendant must establish that any questions of law are clear and

16   undisputed, and that under no set of circumstances could the claim succeed. *RDF*

17   *Media Ltd. v. Fox Broadcasting Co.,* 372 F.Supp.2d 556, 561 (C.D.Cal.2005). This

18   motion to strike all nationwide class allegations is improper and must be denied on

19   several grounds.

20       First, courts generally review class allegations through a motion for class

21   certification, after plaintiffs have had the opportunity to develop their claims and

22   class through discovery. *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 570-72 (2d

23   Cir.1982).  Motions to strike class allegations are highly disfavored because it

24   bypasses the rigorous class certification analysis required by Fed.R.Civ.P. 23.

25

[3] The one case cited by Defendant, *B.K. Fashion, Inc. v. Ambassador Coll.*
26   *Bookstores, Inc.* 2009 WL 1159956, at *3 (C.D. Cal. April 27, 2009) granted a 12(e)
27   motion when the Complaint was not specific enough as to a breach of contract claim,
     such that the Court could not determine what portion of Plaintiffs' claims were barred
28   by the Statute of Frauds.

Second, Defendant is unable to meet its burden under Rule 12(f) to show that the nationwide class allegations are "redundant, immaterial, impertinent, or scandalous" and as such should be stricken.  The class allegations in the Complaint address the elements of Rule 23 and clearly relate to the subject matter of the lawsuit.  *See LeDuc v. Kentucky Central Life Ins. Co.,* 814 F.Supp. 820, 823 (N.D.Cal.1992) (holding that "motions to strike are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.").

Third, Defendant fails to meet its burden, under Rule 12(f), of demonstrating that a nationwide class could not be certified under any circumstances.  Defendant argues that a class entailing all of its customers is overbroad, yet the Complaint does not identify any of Defendant's customers who were not charged hidden fees or were not double-billed.  Stated another way, it is Plaintiffs' contention that all of Defendant's customers are charged these hidden fees for any purchase, and all of Defendant's customers are double-billed, such that a class including all of Defendant's customers is appropriate.[4]

This is unlike the California cases[5] cited by Defendant where class allegations were stricken.  Further, in each of those cases – all district court opinions – leave to amend was granted. *See Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009)(noting that leave to amend had been granted even after determining that a class including all Mac purchasers, even those who never suffered an injury, was overbroad); *see Sanders v. Apple, Inc.*, 2009 WL 150950, at *10-11 (N.D. Cal. 2009)(granting leaving to amend even after stating that an individualized

---

[4] That some class members may have just purchased one game, and some may have become GameSaver members is immaterial, and Defendant fails to cite any authority to the contrary.

[5] Defendant has also cited to two Illinois district court opinions. [Motion, p. 17].

1    assessment of each putative class member's state of mind is what would prevent

2    class certification).  Therefore, the class allegations should not be stricken.

3         A.    **Defendant's contention that a section 17200 claim is not available to**

4               **non-California residents lacks merit.**

5         Defendant argues that Plaintiffs' section 17200 claim is not appropriate for a

6    nationwide class action, and cite to *Norwest Mortgage, Inc. v. Superior Court*, 72

7    Cal. App. 4th 214 (1999).  However, as was more recently noted by the California

8    Supreme Court in *Kearney v. Salomon Smith Barney, Inc*., 39 Cal. 4th 95, (2006),

9    whether or not section 17200 can apply to protect individuals who reside and live

10   outside of California should be addressed on a case-by-case basis. *See id.* at 131-32

11   (holding that when the "potentially more controversial aspects of" section 17200 will

12   not affect recovery, then normal application of a choice of law analysis should

13   apply).  Of note is Defendant's failure to cite to the comparative New York statute

14   and how it compares to section 17200.

15        Furthermore, Courts have rejected the possibility of a state-by-state choice of

16   law analysis as a basis for summarily striking nationwide class allegations before the

17   class certification hearing.  *In re Saturn L-Series Timing Chain Product Liability*

18   *Litig.,* 2008 WL 4866604 (D.Neb. Nov.7, 2008).  To the contrary, courts have

19   certified nationwide classes despite the same objection that choice of law issues

20   precluded certification. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th

21   Cir.1998).

22        *Khorrami v. Lexmark Int'l Inc.,* No. CV 07-01671 (C.D.Cal. Sept. 13, 2007) is

23   directly on point.  In *Khorrami*, the court denied a motion to strike nationwide class

24   allegations on causes of actions for, among other things, "conversion" arising from

25   allegations that toner remained in defendant Lexmark brand toner cartridges at shut

26   down. *Id.* at 11. The court in *Lexmark* found that defendant's "concern that a

27   nationwide class action relying on state law is inherently unmanageable, and

28   therefore unfit to be certified" is "not without merit." *Id.* at 7. However, the court

reasoned that, were it to strike the class prior to class certification discovery, the court "would in effect be ruling that nationwide or multi-state class actions could never exist because of the variation in each state's substantive laws," and that the "Supreme Court has instructed that [such class actions] can be, and are, maintained in many instances." *Id.* at 8.

Moreover, California's governmental interest test may result in the application of California law to the class' claims. *See, Washington Mutual Bank v. Superior Court*, 24 Cal.4th 906 (2001). California applies a three step governmental interest test to choice of law questions. *Ledesma v. Jack Stewart Produce, Inc.,* 816 F.2d 482, 484 (9th Cir.1987). The Ninth Circuit has explained:

> [F]irst, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction; second, if the laws do not differ, the court must determine whether a **true conflict exists in that each of the relevant jurisdictions has an interest in having its law applied; and** third, if more than one jurisdiction has a legitimate interest, the court must focus **on the comparative impairment of the interested jurisdictions, seeking to identify and apply the law of the state whose interest would be the more impaired**.

*Abogados v. AT & T,* 223 F.3d 932, 934 (9th Cir. 2000) (emphasis added). California's consumer protection statutes, upon which some of plaintiffs' claims are based, are largely analogous to those of the other fifty states, and may afford greater protection to consumers in those other states. *Parkinson v. Hyundai Motor America,* 258 F.R.D. 580, 2008 WL 5233200, at *6 (C.D. Cal. 2008). Even assuming a conflict exists, Defendant cannot show that another state has a more substantial interest in having its laws apply to this action. *Id.*

Lastly, and more importantly, under the choice-of-law analysis, this Court may apply New York law to all fifty states based on a choice of law provision contained in the GameSaver contract. *See Discover Bank v. Superior Court*, 36

Cal.4th 148, 173-174 (2006).  The California Supreme Court summarized California's choice of law provisions as follow:

> "If the trial court finds that the ... claims [at issue] fall within the scope of a choice-of-law clause, it must next evaluate the clause's enforceability pursuant to the analytical approach reflected in section 187, subdivision (2) of the Restatement Second of Conflict of Laws (Restatement). Under that approach, the court must first determine: '(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue....' (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy."

*Washington Mutual Bank, supra,* 24 Cal.4th at 916-17 (fns. and italics omitted).

Accordingly, should this Court determine that Plaintiffs section 17200 is not appropriate for a nationwide class action, Plaintiffs should be given leave to amend New York law that is consistent with both section 17200, section 1671, and all other applicable code sections prohibiting Defendant's unfair business practices.  Based on the foregoing the Motion to Strike the nationwide class allegations must be denied.

## X.    Alternatively, Leave To Amend Should Be Granted.

Assuming, *arguendo*, that Plaintiffs have not provided sufficient information or notice of the basis for their claims in their Complaint, Plaintiffs request leave to amend.  Federal courts should not deny leave to amend unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (C.A. Cal. 2001) (quoting

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000)).  In *Doe v. Nevada*, 356 F.

Supp. 2d 1123, 1125 (D. Nev. 2004), the court stated:

> … a trial court shall grant leave to amend freely "when justice so requires." However, the Ninth Circuit has outlined four reasons why a Court may refuse to grant leave to amend: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party.

In the present case Plaintiffs would amend their Complaint to allege any material information found in this Opposition that this Court believes should be found in the Complaint.

## XI.   Conclusion.

For the foregoing reasons, Defendant's motion should be denied.

Dated:  February 8, 2010

**MAKAREM & ASSOCIATES, APLC**
**MICHAEL H. KIM, PC**

By: _/s/ Jean-Paul Le Clercq_
     JEAN-PAUL LE CLERCQ
     Attorneys for Plaintiff

PROOF OF SERVICE
(Code of Civil Procedure §1013A(d))

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 11601 Wilshire Boulevard, Suite 2440 Los Angeles, CA 90025.   On February 8, 2010, I caused the foregoing document described as:
**PLAINTIFFS' OPPOSITION TO DEFENDANT'S:**
**1.   RULE 12(b)(6) MOTION TO DISMISS;**
**2.   RULE 12(e) MOTION FOR MORE DEFINITE STATEMENT;**
**3.   RULE 12(f) MOTION TO STRIKE.**

Said document was served on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Robert N. Klieger, Esq.
rklieger@kbkfirm.com
Gabriel Miller, Esq.
gmiller@kbkfirm.com
Kendall Brill & Klieger LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

___BY MAIL:  I deposited such envelope in the mail at Los Angeles, California.     The envelope was mailed with postage thereon fully prepaid.  I am readily familiar with this business' practice for collection and processing of mail and that on the same day, and in the ordinary course of business, said mail is deposited in the United States Mail with postage thereon fully prepaid at Los Angeles, California.  I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in the affidavit/proof of service.

___ PERSONAL SERVICE:  I delivered said envelope by hand to the offices of the addressee(s).

_xx_  VIA ELECTRONIC MAIL:  On the interested parties above-designated at the email address noted above.

____ VIA OVERNIGHT DELIVERY:  I placed such envelope for regularly scheduled pickup at our offices on the date of this declaration by our usual overnight delivery service.

I declare under penalty of perjury under the laws of the State of California and the United States of American that the foregoing is true and correct. Executed on February 8, 2010, at Los Angeles, California.

_Stefani McDowell_

Printed on Recycled Paper