**MAKAREM & ASSOCIATES, APLC**
Ronald W. Makarem, Esq. (SB #180442)
Jean-Paul Le Clercq, Esq. (SB #248818)
11601 Wilshire Boulevard, Suite 2440
Los Angeles, California 90025-1760
Phone: (310) 312-0299; Facsimile: (310) 312-0296
Email: makarem@law-rm.com
Email: leclercq@law-rm.com

Michael H. Kim, Esq. (State Bar No. 200792)
**MICHAEL H. KIM , P.C.**
3699 Wilshire Boulevard, Suite 860
Los Angeles, California 90010
Telephone: (213) 639-2900; Facsimile: (213) 639-2909
Email: mkim@mhklawyers.com

Attorneys for Plaintiffs BLAKE R. WILLIAMS and
PEGGY J. McGREGOR, individually and
on behalf of all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

BLAKE R. WILLIAMS, an individual, and PEGGY J. McGREGOR, an individual, for themselves and on behalf of all others similarly situated,

Plaintiffs,

v.

OBERON MEDIA, INC., a Delaware corporation, and DOES 1 through 10, Inclusive,

Defendants.

Case No. CV 09-8764 JFW (AGRx)

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Complaint filed: 11/30/2009
Complaint served: 12/10/2009

//

//

//

## TABLE OF CONTENTS

I. INTRODUCTION.................................................................... 1

II. PROCEDURAL HISTORY ...................................................... 1

III. STATEMENT OF FACTS.................................................... 2

A. Parties.................................................................................... 2

B. Oberon Media.......................................................................... 2

C. GameSaver Sign-Up.................................................................. 3

D. No Explicit User Consent for Automatic Renewal of the GameSaver Membership.................................................................... 4

E. System Defects in the Game Centers........................................ 6

F. User-Interface Defect in GameSaver Cancellation...................... 8

G. Undisclosed Foreign Transaction Fees...................................... 9

IV. CLASSES.............................................................................. 10

1. Class #1(a): Failure To Deliver Monthly Subscription Game – Damages 10

2. Class #1(b): Failure To Deliver Monthly Subscription Game – Injunction 10

3. Class #2(a): Signed-Up in Error – Damages 10

4. Class #2(b): Signed-Up in Error – Injunction 10

5. Class #3(a): Duplicate Membership – Damages 11

6. Class #3(b): Duplicate Membership – Injunction 11

7. Class #4(a): System Billing Error – Damages 11

8. Class #4(b): System Billing Error – Injunction 11

9. Class #5(a): Foreign Transaction Fee – Damages 11

10. Class #5(a): Foreign Transaction Fee – Injunction 11

11. Class #6(a): Automatic Renewal Class – Damages 11

12. Class #6(b): Automatic Renewal Class – Injunction 12

13. Class #7(a): Unable To Cancel Class – Damages 12

14. Class #7(b): Unable To Cancel Class – Injunction 12

V. LEGAL ARGUMENT ........................................................................ 12

A. Consumer Fraud and Defect Cases Are Particularly Appropriate for Certification........................................................................ 12

B. The Proposed Class Satisfies Rule 23.................................................... 13

1. The Legal Standard. ........................................................................ 13

2. Plaintiffs Satisfy The Four Requirements Of Rule 23(A)............. 14

a. The Members Of The Proposed Class Are Ascertainable And So Numerous That Joinder Is Impracticable.. 14

b. This Case Presents Common Questions of Law and Fact..... 15

c. The Claims of the Representative Plaintiffs Are Typical of the Claims of All Class Members.......................... 19

d. The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class........................... 21

3. Plaintiffs Satisfy the Requirements of Rule 23(b)(3)...................... 22

i. Common questions of law and fact predominate over individual issues.................................................. 22

ii. A class action is the superior method for the fair and efficient adjudication of this controversy............. 23

VI. CONCLUSION.......................................................................................... 25

# TABLE OF AUTHORITIES


| CASES | PAGES |
|---|---|
| *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) | 12 |
| *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) | 12, 13, 21 |
| *Blackie v. Barrack* 524 F.2d 891, 901, fn. 17 (C.A.Cal. 1975) | 13, 21 |
| *Eisen v. Carlisle & Jacquelin*, 417 US 156 (1974) | 13, 14 |
| *General Tel. Co. of Southwest v. Falcon*, 457 US 147 (1982) | 14 |
| *E.E.O.C. v. Gen. Tel. Co. of Northwest, Inc.*, 599 F.2d 322, 328–29 (9th Cir. 1979) | 14 |
| *Andrews Farms v. Calcot, Ltd.*, F.R.D. 640, 651 (E.D.Cal. 2009) | 15 |
| *Perez-Funez v. District Director*, 611 F. Supp. 990, 995 (C.D.Cal. 1984) | 15 |
| *Mazza v. American Honda Corp.*, 254 F.R.D. 610, 628 (C.D. Cal. 2008) | 15, 23 |
| *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) | 15, 17 |
| *Kincaid v. City of Fresno*, 244 F.R.D. 597 (E.D. Cal. 2007) | 15 |
| *BNI N.Y. v. DeSanto*, 177 Misc. 2d 9, 14-15, 675 N.Y.S. 2d 753 ( 1998 ) | 15 |

*Blackie v. Barrack*,
524 F.2d 891, 902 (9th Cir. 1975)............................................ 16

*Chamberlan v. Ford Motor Co.*,
223 F.R.D. 524, 526 (N.D. Cal. 2004), *aff'd* 402 F.3d 952........ 17, 19

*Hansen v. Ticket Track, Inc.*,
213 F.R.D. 415 (W.D. Wash. 2003)........................................... 17

*Alberto v. GMRI, Inc.*,
252 F.R.D. 652, 660 (E.D. Cal. 2008)....................................... 17

*Staton v. Boeing Co.*,
327 F.3d 938, 957 (9th Cir. 2003)............................................... 20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011, 1020 (9th Cir. 1998)........................................... 20, 21

*Wiener v. Dannon Co., Inc.*,
255 F.R.D. 658, 668 (C.D. Cal. 2009)........................................ 21

*B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*,
191 Cal.App.3d 1341 (1987)...................................................... 22

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227, 1234-1235 (9th Cir. 1996).................................... 23

*Zinser v. Accufix Research Institute, Inc.*,
253 F.3d 1180, 1190 (9th Cir.2001)............................................. 23

*Discover Bank v. Superior Court*,
36 Cal.4th 148, 173-174 (2006)................................................... 24

*Washington Mutual Bank v. Superior Court*,
24 Cal.4th 906 (2001).................................................................. 24, 25

**STATUTES**

CA Business & Professions Code section 17600...………………….... 5

Fed. R. Civ. Proc. 23(b)................................................................ 13, 20

Fed. R. Civ. Proc. 23(a)........................................................................ 13, 14, 20

Fed. R. Civ. Proc. 23(a)(1).................................................................... 14

Fed. R. Civ. Proc. 23(a)(2) .................................................................... 15

New York's General Business Law ("N.Y.G.B.") section 349.................... 15

New York's General Business Law ("N.Y.G.B.") section 350.................... 15, 16

New York's General Obligations Code section 5-503(2)............................ 16

Fed. R. Civ. Proc. 23(a)(3).................................................................... 17

Fed. R. Civ. Proc. 23(a)(4).................................................................... 20

Fed. R. Civ. Proc. 23(b)(3)..................................................................... 20, 21, 23

**SECONDARY SOURCES**

7A Charles A. Wright, *et al.*, *Federal Practice and Procedure*, § 1751 (3d ed. 2005)............................................................. 12

Advisory Committee's Notes on Fed. Rule Civ. Proc. 23, 28 U.S.C.App. p. 697............................................................. 12, 13, 21

*Newberg on Class Actions* (4th ed. 2002 and 2008 Supplement) ("*Newberg*") § 3:5 (collecting cases)........................................ 15, 22

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Blake Williams and Peggy McGregor bring this class action under New York consumer protection laws and common law unjust enrichment and breach of contract for damages and to enjoin Defendant Oberon Media, Inc. ("Oberon") from continuing to engage in further deceptive and unfair business practices that affect consumers who use its online game services. The deceptive practices start from the design and implementation of the game website where people use Oberon's game services to the revelation of system-wide errors that cause financial losses to its users.

Oberon conceals these system errors which cause double billing, unauthorized enrollment in Oberon's "GameSaver" program, and failure to provide monthly subscription games pursuant to that program. Oberon further fails to properly disclose the automatic renewal of membership in Oberon's GameSaver program, the difficulty/inability for class members to cancel their membership, and hidden fees charged to every user of Oberon's services.

## II. PROCEDURAL HISTORY

Plaintiffs served the original Complaint on December 10, 2009. On March 1, 2010, this Court took Defendant's rule 12(b)(6) motion under submission. On March 4, 2010, this Court granted Defendant's motion, with leave to amend, as to Plaintiffs' second cause of action for engaging in unfair, illegal and deceptive business acts. Plaintiffs third (unjust enrichment) and fourth (breach of contact) claims remain unaffected and still apply if New York law is controlling.

Plaintiffs First Amended Complaint is due on March 18, 2010. Plaintiffs will amend the second cause of action in the Complaint to allege violations of New York Business law, including section 349, and adding three new Plaintiffs: (1) Barbara Jean Parks; (2) Candice Schutz; and (3) Mark Lindsey. The present motion is filed consistently with the allegations that will be found in the First Amended Complaint.

Additionally, Defendant failed to provide any documents as part of their initial disclosures, due March 5, 2010 that may have been utilized as part of this motion.

## III. STATEMENT OF FACTS

### A. Parties

Plaintiffs are Blake R. Williams and Peggy J. McGregor. Ms. Williams resides in Los Angeles, California. Ms. McGregor resides in Spreckels, Monterey County, California. Plaintiffs will amend the Complaint to add three more Plaintiffs.

Defendant Oberon Media, Inc. ("Oberon") is a Delaware corporation, who maintains its primary place of business in New York City, New York.

### B. Oberon Media

Oberon publishes and sells casual video games. (Deposition of Justin Goldstein, 13:23-14:5) Oberon sells its games at special online game platforms called the Game Centers, which are designed, programmed and operated specifically for that purpose by Oberon. (Goldstein Depo., 20:12-21:13).[1]

Oberon maintains databases of records of customers to keep track of identities, activities, and payment events pertaining to every single user of the Game Saver. (Goldstein Depo., 16:3-18:22, 19:20-20:11, 21:14- 25, 23:13-20, 24:16-25; 198:5-199:20.) Oberon maintains a user-flow database that shows a "page-by-page flow or map of the pages that user sees when he subscribes to [the] Game Saver program." (Goldstein Dep., 16:10-13.) Oberon maintains a database that archives all the web pages created by Oberon for the Game Centers. (Goldstein Dep., 17:10-18:1.) Oberon maintains a user account database that "contains the unique identifier . . . for each Game Saver user account" and "whatever other address information the user [has given Oberon]." (Goldstein Depo., 18:8-12.) Oberon maintains a transaction database which "records information about user payment transactions.

[1] All citations to the Deposition of Jordan M. Goldstein are to page and line numbers in the deposition transcript, an excerpt of which is attached as Exhibit A to the Declaration of Michael H. Kim.

So when they join Game Saver and then each monthly charge." (Goldstein Depo., 19:23-20:1.) Oberon also maintains a separate "events database" to keep track of "information about particular events in a user account. For example, when the user joined Game Saver, it will record that event. When the user purchased an additional game at the Game Saver member price, it would record those purchases of those events." (Goldstein Depo., 24:16-22.)

**C. <u>GameSaver Sign-Up</u>**

The Game Centers feature a games section where users can view and select games to buy and download. (Kim Decl., Exh. C.) To select a game to buy, the user clicks on the thumbnail image of the game, which links the user to a "Select Purchase Option" section. (Kim Decl., Exh. D.)

When the user sees the "Select Purchase Option" page, the first thing that grabs his attention is the "Options" box where he signs up for the GameSaver Membership or buy the game at full price without the GameSaver sign-up. (Kim Decl., Exhs. D, G and J.) The Options box also informs the user that the GameSaver Membership comes with a monthly subscription game each month. (Kim Decl., Exhs. D, G and J.) The Options box also informs the user that the GameSaver comes with a monthly fee. (Kim Decl., Exhs. D, G and J.) The Options box makes a full disclosure of these basic terms at first sight, as evidenced by the screenshots taken of the Select Purchase Options page from the Game Center operated by Oberon Media. (Kim Decl., Exhs. D, G and J.)

The "Select Purchase Option" page, however, does not disclose the actual Terms of Use that are relevant to the user signing up for the GameSaver Membership. (Goldstein Depo., 156:5-159:25; Kim Decl., Exhs. D, G and J.) Instead, the Terms of Use are hidden inside a hyperlink placed at the bottom of the page and marked "Terms and Conditions." (Goldstein Depo., 156:5-159:25; Kim Decl., Exhs. D, G and J.) On the actual webpage, this hyperlink is underlined and in blue. Other than this mundane text feature, there is nothing to grab the user's

attention to this hyperlink. There is nothing on the webpage that says that the Terms of Use for the GameSaver can be viewed by clicking on that link. Additionally, the user is not required to click on this link before he can proceed to purchase the GameSaver Membership. Contrary to this small hyperlink, the purchase button to buy the GameSaver is prominently displayed as a big red button in the middle of the webpage with the label "CONTINUE." (Goldstein Depo., 156:5-159:25; Kim Decl., Exhs. D, G and J.)

When the user clicks on the "CONTINUE" button, he is taken to the "Checkout" section. (Kim Decl., Exhs. E, H and K.) At the checkout section, the user provides his billing information, shipping address, credit card information, and purchase confirmation. (Kim Decl., Exhs. E, H and K.)

Currently, there are approximately 270,000 current and former GameSaver members nation-wide and 27,000 current and former GameSaver members in California alone. (Goldstein Depo., 84:2-86:24, 88:2-90:25; Kim Decl., Exh. B.) And it can be reasonably assumed that most of these people did not read the Terms of Use when they signed up to become a GameSaver Members. Oberon's user flow database for each member will allow us to make that determination in the course of this litigation. Ultimately, Plaintiffs will be seeking an injunctive order to correct this deceptive business practice.

**D. <u>No Explicit User Consent for Automatic Renewal of the GameSaver Membership.</u>**

As evidenced by the screenshots of the "Select Purchase Option" page, the GameSaver program is prominently advertised as a fixed-term subscription: 2 months, 6 months or 12 months. (Kim Decl., Exhs. D, G, and J.) There is nothing on the page itself to suggest that the GameSaver subscription will "automatically" renew after the end of the initial commitment term. In fact, in reading all the web pages, from the games section through the sign-up process section to the confirmation section, there is no explicit consent or explanation that the GameSaver

subscription will automatically renew and the subscription fees will be automatically charged to the user's credit card. (Goldstein Depo., 162:13-166:4)

That disclosure is tucked away inside the Terms of Use contract which in turn is hidden inside a small hyperlink located at the bottom of a single page within the multiple-step sign-up process. That disclosure is stated in a 6-page single-spaced small print contract, which can neither be downloaded nor printed. The contract can be viewed only as a pop-up page using a web browser.[2] (Goldstein Depo., 162:13-166:4, 199:22-200:5; Kim Decl., Exhs. M, N and O.)

More importantly, there is no user-interface mechanism in place that requires the user to click the link to see the Terms of Use contract before signing up for the GameSaver subscription. (Goldstein Depo., 156:5-159:25). In other words, at no point is a user required to acknowledge that they have, in fact, read the terms and conditions of GameSaver membership, a common practice in the internet industry where such terms accompany membership. Furthermore, there is no separate location where a user must either acknowledge or ratify that their Game Saver membership will automatically renew. Rather, it is easier than not for users to bypass this process or miss this important step when they sign up:

> We're attempting to give a very short explanation of some of the basic terms of the Game Saver membership because people don't really tend to want to read a huge, long thing when they're about to buy something. So we give them as much as we can that they'll read.

(Goldstein Depo., 162:9-14). Again, Plaintiffs seek damages associated with this knowingly deceptive practice and injunctive relief to correct this deceptive and unfair business practice.

---

[2] On October 11, 2009, the State of California signed into law Business & Professions Code section 17600, which states: "It is the intent of the Legislature to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." This law will be effective December 1, 2010, but highlights California's fundamental public policy in regard to automatic renewals.

### E. System Defects in the Game Centers

The problem with Oberon's unlawful business practice goes beyond the deceptive sign-up process, and touches upon its implementation of the Game Centers themselves. The Game Centers are infected with system bugs, system errors, and user-interface defects that cause financial losses to their users, especially the GameSaver members. These system defects cause monthly subscription game downloads to fail, unauthorized GameSaver Membership sign-ups, unauthorized duplicate GameSaver Memberships, and system billing errors.

There is a system error in the Game Centers that prevents GameSaver members from redeeming their monthly subscription games or receiving a notice of their monthly subscription games. (Goldstein Depo., 224:7-10; 267:3-7; Goldstein Depo., 96:20- 97:25, 142:10-22, 175:2-176:11, 206:20-23.) This occurs when a system bug throws a user in a loop where the system doesn't recognize his account and he is prevented from conducting his normal account activities, and instead, the system bug takes him to a purchase options page. This redeeming error may also occur as a result of a processing error because Oberon's servers can't pull correct information from the Game Centers.

There is a system error in the Game Centers that erroneously sign users up for the Game Saver subscription. This error arises from certain undisclosed system bugs in the programming that misread user-interface functions. (Goldstein Depo., 224:7-10; Goldstein Depo., 91:4- 92:24.)

There is a system error in the Game Centers that erroneously adds a second GameSaver membership to an existing account. (Goldstein Depo.,136:7-137:9.) Again, the error stems from Oberon's system defect that does not recognize the users' existing GameSaver account and accepts them for a second membership.

There is a system defect in the Game Center that does not allow GameSaver members to cancel their subscription. (Goldstein Depo., 124:5-125:19, 242:9-244:5; Kim Decl., Exh. K; Goldstein Depo., 175:2-176:11.) This system defect is caused

by the same processing error that causes Oberon's servers to pull wrong information from the Game Centers or an user-interface defect that makes it very difficult to cancel the subscription. (*See infra*, Section E.)

There are "system billing errors" in the Game Centers that result in erroneous billing, including double billing. (Goldstein Depo., 144:11-20)

In or about June of 2009, alerted by the mounting complaints about these system defect issues, Oberon began secretly tracking information concerning customer service complaints. (Goldstein Depo., 50:8 – 51:25.) Through its internal tracking program, Oberon has confirmed receipt of the following customer complaints about these system defects:

1. 3,464 members complained about not receiving their monthly subscription games since June, 2009; (Goldstein Depo., 96:20- 97:25, 140:2-143:12; Kim Decl., Exh. B.)

2. 2,619 members complained about being signed up for the GameSaver program in error since June, 2009; (Goldstein Depo., 91:4- 92:24; Kim Decl., Exh. B.)

3. 1,335 members complained about duplicate GameSaver Memberships since June, 2009; (Goldstein Depo., 132:2-134:12, 140:2-143:12; Kim Decl., Exh. B.)

4. 159 members have complained about billing after cancellation since June of 2009; (Goldstein Depo., 205:24-207:7).

5. 1,407 members have complained about the system billing errors since June of 2009; (Goldstein Depo., 144:11-145:11; Kim Decl., Exh. B).

These complaints represent a small segment of the entire GameSaver customer base affected by the system defects.

Oberon's deceptive conduct goes beyond allowing these system errors to fester and grow since the Game Centers system went online back in February of 2008. Oberon's deceptive business practice is its response, or lack thereof, after

finding about these system issues. (Goldstein Depo., 246:19-247:14.)

There has been no action on the part of Oberon to warn users of these serious system issues. Oberon chose not to send out an email to its users of these issues even though they have full access to their emails and addresses. Oberon chose not to post a notice on any of the Game Centers regarding these system issues even though they are in full control of the implementation and operation of these Game Centers. Oberon has refused to act to prevent other users from being affected by these system errors after receiving over 10,000 complaints about them. Plaintiffs bring this class action to seek an injunction to change Oberon's business practices with respect to these system errors.

**F. <u>User-Interface Defect in GameSaver Cancellation.</u>**

Aside from the processing error, Oberon's GameSaver cancellation mechanism has a significant user-interface problem. This user-interface problem has to do with the fact that it is very difficult for users to find the GameSaver cancellation button. For instance, it has come to Oberon's attention that people were having difficulty cancelling at the Game Centers on Yahoo's website. (Goldstein Depo., 122:2-8.) The issue is the placement of the cancellation button within the FAQ page, and it has been discussed whether or not that should be changed. (Goldstein Depo., 107:4-108:3.) Oberon chose to not take any action and the problem continues to exist. (Goldstein Depo., 107:4-108:3)

Another major user-interface problem with cancelling is that Oberon has not provided any clear instructions as to how to cancel the Game Saver subscription. For instance, the GameSaver contract provides that a user may cancel his Gamesaver membership any time by logging in to his account and clicking ["CANCEL"] from the FAQ page. The problem with that instruction is there is no FAQ page. In the FAQ page itself, the instruction takes the user in a endless loop. It says: "You may cancel your GameSaver membership any time by logging in to your account and clicking here." Thus once the user logs in to his account and is able to find the FAQ

page, he will find that he is asked to log in to his account again to find the FAQ page again. (Goldstein Depo., 232:11-236:17, 238:4-240:13, 277:18-279:5; Kim Decl., Exhs. M, N and O.) Again, Plaintiffs bring this class action for a court order compelling Oberon's to change its business practices with respect to these user-interface problems.

### G. Undisclosed Foreign Transaction Fees

This class action also seeks an order compelling Oberon to notify its users that payment transactions done at the Game Centers are done with a foreign corporation in Cyprus and that they may incur a foreign transaction fee. This foreign transaction fee ("FTF") results from the fact that all payment transactions to buy games or sign up for the GameSaver membership are done with an overseas merchant, known as Oberon Media Enterprises Limited, based in Cyprus, and not the New York-based company, Oberon Media, Inc. (Goldstein Depo., 65:1- 66:12.) Oberon has concealed this information from its users of the Game Centers. This information is not even disclosed in the hidden Terms of Use contract or in any of the Checkout or My Account sections that users encounter during the initial transaction process. (Goldstein Depo., 79:20-81:8; Kim Decl., Exhs. D, E, F, G and L.)

Oberon knew or should have known that its users would incur a separate FTF for using the Game Centers, and yet chose not provide a notice to its users. (Goldstein Depo., 65:1- 66:12; Goldstein Depo., 99:8 -21, 103:2-104:22; Kim Decl., Exh. B.) Since June of 2009, when Oberon started secretly tracking customer complaints internally about the GameSaver program, Oberon has identified 85 customers who have complained about the FTF. (Goldstein Depo., 99:8 -21, 103:2-104:22; Kim Decl., Exh. B.) Despite this knowledge, Oberon has concealed and continues to conceal the FTF from its users.

## IV. CLASSES

Plaintiffs hereby seek to certify the following Plaintiff Classes[3] for damages and injunctive relief to enjoin Oberon's conduct based on Oberon's unjust enrichment, breach of contract, and "deceptive" practices:

1. **Class #1(a): Failure To Deliver Monthly Subscription Game – Damages**

GameSaver members who suffered injury due to Oberon's system error that causes failure to deliver monthly subscription games during the class period. These individuals are requesting recovery of monetary damages.

2. **Class #1(b): Failure To Deliver Monthly Subscription Game – Injunction**

GameSaver members who suffered injury due to Oberon's system error that causes failure to deliver monthly subscription games during the class period. These individuals are seeking injunctive relief requiring Oberon to fix the system error causing this injury.

3. **Class #2(a): Signed-Up in Error – Damages**

GameSaver members who suffered damage as a result of an Oberon system error that signs up individual as GameSaver members in error during the class period. These individuals are requesting recovery of monetary damages.

4. **Class #2(b): Signed-Up in Error – Injunction**

GameSaver members who suffered damage as a result of an Oberon system error that signs up individual as GameSaver members in error during the class period. These individuals are seeking injunctive relief requiring Oberon to fix the system error causing this injury.

[3] Excluded from all Classes are Defendant and any entity in which it has a controlling interest, its legal representatives, heirs and successors, any judge to whom this case is assigned, and any member of the judge's immediate family.

5. **<u>Class #3(a):</u> Duplicate Membership – Damages**

GameSaver members who were charged for a second GameSaver subscription because of Oberon's system error during the class period. These individuals are requesting recovery of monetary damages.

6. **<u>Class #3(b):</u> Duplicate Membership – Injunction**

GameSaver members who were charged for a second GameSaver subscription because of Oberon's system error during the class period. These individuals are seeking injunctive relief requiring Oberon to fix the system error causing this injury.

7. **<u>Class #4(a):</u> System Billing Error – Damages**

GameSaver members and Game Center users who were billed multiple times for one purchase because of Oberon's system error during the class period. These individuals are requesting recovery of monetary damages.

8. **<u>Class #4(b):</u> System Billing Error – Injunction**

GameSaver members and Game Center users who were billed multiple times for one purchase because of Oberon's system error during the class period. These individuals are seeking injunctive relief requiring Oberon to fix the system error causing this injury.

9. **<u>Class #5(a):</u> Foreign Transaction Fee – Damages**

GameSaver members and buyers of Oberon games who incurred a foreign transaction fee during the class period. These individuals are requesting recovery of monetary damages.

10. **<u>Class #5(a):</u> Foreign Transaction Fee – Injunction**

GameSaver members and buyers of Oberon games who incurred a foreign transaction fee during the class period. These individuals seek injunctive relief requiring Oberon to make a full disclosure of the foreign transaction fee.

11. **<u>Class #6(a):</u> Automatic Renewal Class – Damages**

GameSaver members whose GameSaver membership automatically renewed after the initial subscription term ended during the class period. These individuals are requesting recovery of monetary damages.

12. **<u>Class #6(b):</u> Automatic Renewal Class – Injunction**

GameSaver members whose GameSaver membership automatically renewed after the initial subscription term ended during the class period. These individuals seek injunctive relief requiring Oberon to either remove the automatic renewal policy or require explicit consent for automatic renewal.

13. **<u>Class #7(a):</u> Unable To Cancel Class – Damages**

GameSaver members whose initial membership term ended but were unable to cancel their GameSaver member because of a user-interface defect. These individuals are requesting recovery of monetary damages.

14. **<u>Class #7(b):</u> Unable To Cancel Class – Injunction**

GameSaver members whose initial membership term ended but were unable to cancel their GameSaver member because of a user-interface defect. These individuals seek injunctive relief requiring Oberon to fix this user-interface defect.

## V. <u>LEGAL ARGUMENT</u>

The class action device allows large numbers of claims involving the same core issues to proceed in the aggregate, providing a path to relief where otherwise there is none. "Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *see generally* 7A Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 1751 (3d ed. 2005).

### A. <u>Consumer Fraud Is Particularly Appropriate for Certification.</u>

Consumer cases like this one, which arise from a single course of conduct that affects large numbers of consumers, are particularly amenable to class treatment. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); Advisory Committee's Notes on Fed. Rule Civ. Proc. 23, 28 U.S.C.App. p. 697. Cases involving concealment are often negative-value cases, that is, the cost to litigate an individual

case exceeds the expected return for an individual plaintiff. When these cases proceed as a class, economies of scale allow the aggregated cases to go forward in an efficient manner and litigation costs no longer exceed the expected return. Class actions are often the only means of access to the legal system when the defendant's conduct causes injury to many consumers, but on a small scale. *Id.* at 617. As the *Amchem* Court explained:

> The Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.' Kaplan, Prefatory Note 497. As concisely recalled in a recent Seventh Circuit opinion: "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. Maced v. Van Ru Credit Corp., 109 F.3d 338, 344 (1997).

*Amchem*, 521 U.S. at 617. This case is ideally suited to class treatment because it involves Oberon's uniform conduct associated with failure to fix or notify about system-wide bugs and errors, undisclosed automatic renewal of the GameSaver program, and non-disclosure of the FTF.

**B. <u>The Proposed Class Satisfies Rule 23.</u>**

**1. <u>The Legal Standard.</u>**

To be certified, a class must satisfy the four requisites of Rule 23(a) and at least one part of Rule 23(b). Fed. R. Civ. Proc. 23. In determining whether class action is proper, "[a] court is bound to take substantive allegations of complaint as true, thus necessarily making class order speculative in sense that plaintiff may be altogether unable to prove his allegations." *Blackie v. Barrack*, 524 F.2d 891, 901, fn. 17 (C.A.Cal. 1975). In fact, the Supreme Court has stated that district courts do not have authority "to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *See Eisen v. Carlisle & Jacquelin*, 417 US 156, 177–178 (1974). Only in limited circumstances should a court look to the merits of the case to determine whether a class may be certified.

*General Tel. Co. of Southwest v. Falcon* (1982) 457 US 147, 160. Furthermore, the Ninth Circuit "has adopted a liberal construction of Rule 23." *E.E.O.C. v. Gen. Tel. Co. of Northwest, Inc.*, 599 F.2d 322, 328–29 (9th Cir. 1979).

### 2. Plaintiffs Satisfy The Four Requirements Of Rule 23(A)

Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. Proc. 23(a). These four requisites are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy." Plaintiffs' proposed Class satisfies all four requirements.

#### a. The Members Of The Proposed Class Are Ascertainable And So Numerous That Joinder Is Impracticable.

Rule 23(a) requires that the proposed Class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. Proc. 23(a)(1). To begin, ascertainability of class members will not be difficult, as Oberon maintains databases of records of customers to keep track of identities, activities, and payment events pertaining to every single user of Oberon's services, including membership in the GameSaver program. (Goldstein Depo., 16:3-18:22, 19:20-20:11, 21:14- 25, 23:13-20, 24:16-25; 198:5-199:20).

Additionally, while there is no fixed rule regarding the requisite number of class members, a class with more than 40 members will satisfy the numerosity requirement. *Andrews Farms v. Calcot, Ltd.,* 258 F.R.D. 640, 651 (E.D.Cal. 2009); *see also* 1 *Newberg on Class Actions* (4th ed. 2002 and 2008 Supplement) ("*Newberg*") § 3:5 (collecting cases). The exact number of class members need not

be known with precision so long as "general knowledge and common sense indicate that it is large." *Perez-Funez v. District Director*, 611 F. Supp. 990, 995 (C.D.Cal. 1984). A "reasonable estimate" of the number of purported class members satisfies the numerosity requirement of Rule 23(a)(1). *Mazza, supra*, 254 F.R.D. at 615.

The number of people included in the Proposed Class here makes joinder of all claimants in this action impracticable. There are over 270,000 GameSaver members nationwide, and 27,000 GameSaver members in California alone. Further, as identified above, hundreds to thousands of individuals have complained about Oberon's conduct which has lead to each individual Subclass. Therefore, there is no question that joinder of these GameSaver members is impracticable.

**b. <u>This Case Presents Common Questions of Law and Fact.</u>**

Rule 23(a)(2) requires that there be questions of law or fact common to the class. "Commonality" is generally satisfied where, as in this case, "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Differences in the ways in which these practices affect individual members of the class do not undermine the finding of commonality. *Armstrong*, 275 F.3d at 868 (finding commonality requirement satisfied despite individual class members having different disabilities, since all suffered similar harm as a result of defendant's actions); *Kincaid v. City of Fresno*, 244 F.R.D. 597 (E.D. Cal. 2007). In other words, if common questions of law **or** fact exist, Plaintiffs have met this requirement for certification.

The applicable law in this class action is not only New York Business law, but common law unjust enrichment and breach of contract. In particular, New York's General Business Law ("N.Y.G.B.") section 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." This statute is well suited for

this kind of class-wide consumer action. As stated in *BNI N.Y. v. DeSanto*, 177 Misc. 2d 9, 14-15, 675 N.Y.S. 2d 753 ( 1998 ).:

> "(GBL § 349 ) is a broad, remedial statute... directed towards giving consumers a powerful remedy. The elements of a violation of ( GBL § 349 ) are (1) proof that the practice was deceptive or misleading in a material respect and (2) proof that plaintiff was injured...There is no requirement under ( GBL § 349 ) that plaintiff prove that defendant's practices and acts were intentional, fraudulent or even reckless. Nor does plaintiff have to prove reliance upon defendant's deceptive practices "

Additionally, section 349 allows consumers to sue for $50.00 or actual damages which may be trebled up to $1,000.00 upon a finding of a " *wil(ful) or know(ing) violat(ion)*" on the part of Oberon. Attorney's fees and costs may be recovered as well. As long as the deceptive business practice has "*a broad impact on consumers at large*" proving a violation of section 349 is straight forward.

Furthermore, N.Y.G.B. section 350 also prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." Plaintiffs' First Amended Complaint will allege violations of both N.Y.G.B. sections 349 and 350. Plaintiffs' operative complaint also includes claims for unjust enrichment and breach of contract.

Lastly, applicable to Oberon's automatic renewal clause, New York's General Obligations Code section 5-503(2), states:

> No provision of a contract for service . . . to or for any . . . personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service . . . gives notice to the person furnishing such contract service . . . of his intention to terminate the contract at the expiration of such term, shall be enforceable against the person receiving the service . . . unless the person furnishing the service . . . at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give to the person receiving the service . . . written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract.

This class action looks at Oberon's conduct and business practices starting with the defective design and implementation of the game website. This class action also looks at and evaluates the deceptiveness and unfairness of Oberon's conduct in hiding the FTF and automatic renewal or continuation of the GameSaver subscription to hiding the GameSaver cancellation button so that it would be difficult for its users to cancel the membership. *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) (certification is appropriate where "the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable").

Accordingly, the common questions of law and fact associated with the following classes are as follows:

**Class #1 – Failure to Deliver Monthly Subscription Game**

This class consists of GameSaver members who sign up for the monthly subscription, but cannot redeem the games every month or in a given month due to a system error in Oberon's online internet service. The common questions of law or fact are as follows:

1. Whether Oberon failed to deliver monthly subscription games to GameSaver members;

2. Whether Oberon's failure to deliver monthly subscription games and concealed the system error from the GameSaver members constitutes a "deceptive act" under the N.Y.G.B;

3. Whether Oberon's failure to deliver monthly subscription games unjustly enriched Oberon;

4. Whether Oberon's failure to deliver monthly subscription games constitutes a breach of contract with GameSaver members.

**Class #2 – Signed Up In Error**

This class consists of users of Oberon's game service who were signed up for the GameSaver program due to a system error in Oberon's online internet service. The common questions of law or fact are as follows:

5. Whether individuals were signed up as GameSaver members as a result of Oberon's system error;

6. Whether signing up individuals as GameSaver members because of a system error constitutes a "deceptive act" under the N.Y.G.B;

7. Whether signing up individuals as GameSaver members because of a system error unjustly enriched Oberon.

**Class #3 – Duplicate Membership**

This class consists of GameSaver members who are charged for a second membership due to a system error in Oberon's online internet service. The common questions of law or fact are as follows:

8. Whether GameSaver members were charged for a second GameSaver subscription because of Oberon's system error;

9. Whether charging GameSaver members for a second GameSaver subscription is a "deceptive act" under the N.Y.G.B.;

10. Whether charging GameSaver members for a second GameSaver subscription unjustly enriches Oberon.

**Class #4 – System Billing Error**

This class consists of users of Oberon's game service who were charged on multiple times for a single game purchase due to a system error in Oberon's online internet service. The common questions of law or fact are as follows:

11. Whether users of Oberon's services, whether a GameSaver member or not, were billed multiple times for a single purchase;

12. Whether charging its users multiple times for a single purchase constitutes a "deceptive act" under the N.Y.G.B;

13. Whether charging its users multiple times for a single purchase unjustly enriches Oberon;

14. Whether charging its users multiple times for a single purchase constitutes a breach of contract.

**Class #5 – Foreign Transaction Fee**

This class consists of users of Oberon's game service who were charged an undisclosed foreign transaction fee at the point of the online game service subscription. The common questions of law or fact are as follows:

15. Whether users of Oberon's services, whether a GameSaver member or not, were charged a FTF for any purchases;

16. Whether being charged an FTF constitutes a "deceptive act" or "false advertising" under the N.Y.G.B. in that Oberon fails to identify the FTF as a cost of any purchases made;

17. Whether being charged an FTF constitutes a breach of contract in that Oberon users purchased games for a price that was less than they were actually charged.

**Class #6 – Automatic Renewal Class**

This class consists of GameSaver members whose online game service contract automatically renewed after the initial agreed term ended and without consent. The common questions of law or fact are as follows:

18. Whether GameSaver Members were automatically renewed into further membership without their consent and incurred additional monthly fees;

19. Whether Oberon's automatic renewal in the GameSaver membership is a "deceptive act" or "false advertising" under the N.Y.G.B. in that members expect to be signing up for a finite membership, but are in fact signed up for an unlimited membership unless cancelled;

20. Whether Oberon has been unjustly enriched because of GameSaver members being automatically renewed into further month-to-month memberships;

21. Whether Oberon's automatic renewal of members in the GameSaver program constitutes breach of contract;

**Class #7 – Unable to Cancel Class**

This class consists of GameSaver service subscribers who could not cancel their subscription due to a system error in Oberon's online internet service. The common questions of law or fact are as follows:

22. Whether GameSaver members were unable to cancel their GameSaver membership after their initial membership term had expired because of a user-interface defect;

23. Whether allowing a user-interface defect to exist constitutes a "deceptive act" under the N.Y.G.B.;

24. Whether allowing a user-interface defect to exist unjustly enriches Oberon.

**c. <u>The Claims of the Representative Plaintiffs Are Typical of the Claims of All Class Members.</u>**

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. Proc. 23(a)(3). "The test of typicality is whether (1) other members have the same or similar injury, (2) the action is based on conduct which is not unique to the named plaintiffs, and (3) other class members have been injured by the same course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001); *see also Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004), *aff'd* 402 F.3d 952 (holding that typicality requirement is satisfied where plaintiffs and class members all have claims arising from the same fraudulent scheme); *Hansen v. Ticket Track, Inc.*, 213 F.R.D. 415 (W.D. Wash. 2003). Representative claims are typical if they are "reasonably

coextensive with those of the absent class members." *Chamberlan*, 223 F.R.D. at 526, *aff'd* 402 F.3d 952; *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 660 (E.D. Cal. 2008).

Named, and to be named, Plaintiffs have typical claims of the above mentioned class in the following ways:

Class #1: Plaintiff Williams has claims typical of other class members because Oberon failed to deliver all monthly subscription games to her while she was a GameSaver member.

Class #2: All named and to-be named Plaintiffs have claims typical of other class members because they either attempted purchase a single game or redeem a monthly subscription game but were instead signed up for a GameSaver membership.

Class #3: Plaintiff Williams has claims typical of other class member because she attempted to retrieve her monthly subscription game but was instead signed up for a second GameSaver membership and incurred duplicate charges.

Class #4: To-be named Plaintiff Schutz has claims typical of other class members because he was double billed for his GameSaver membership.

Class #5: All named and to-be named Plaintiffs have claims typical to other class members because they were all charged a FTF for each of their purchases.

Class #6: Plaintiff Williams has claims typical of other class members because her GameSaver membership was automatically renewed.

Class #7: All named and to-be named Plaintiffs have claims typical to other class members because they were unable to cancel their GameSaver memberships due to Oberon's user-interface defect.

The typicality requirement is well satisfied here. *See Chamberlan v. Ford Motor Co.*, 223 F.R.D. at 526 (alleging "same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims").

**d. The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.**

Rule 23(a)(4) requires that the representative plaintiffs will "fairly and adequately" protect the interests of the class. The Ninth Circuit has set forth a two-prong test for the adequacy requirement: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members: and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) Both prongs are satisfied here.

There is no question that Plaintiffs' interests are aligned with the interests of the entire class, and there is no conflict of interest between them and the other class members. Additionally, Plaintiffs have declared under penalty of perjury that they will cooperate with their attorneys to prosecute this action on behalf of themselves and the interests of the other class members. Williams Decl., ¶26; McGregor, ¶9; *Hanlon*, 150 F.3d at 1021 ("adequacy satisfied where "each plaintiff has the same problem: an allegedly defective rear latchgate which requires repair or commensurate compensation").

The second prong of the adequacy analysis is also satisfied. Plaintiffs' counsel have extensive experience in consumer fraud and class action cases. They have litigated or currently litigating similar cases and handled all aspects of the administration of settlement funds. (Makarem Decl. ¶¶2-7; Kim Decl. ¶¶3-8.) Plaintiffs and their counsel will continue to prosecute this action vigorously. (Makarem Decl. ¶8; Kim Decl. ¶¶9.) The final requirement of Rule 23(a) is readily satisfied.

**3. Plaintiffs Satisfy the Requirements of Rule 23(b)(3).**

In addition to the requirements of Rule 23(a), the proposed Class must satisfy one of the three subsections of Rule 23(b). Here, the proposed Class satisfies the requirements of subsection (b)(3), which requires that:

> questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. Proc. 23(b)(3). "Rule 23(b)(3) encompasses those cases 'in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' *Amchem Prods., Inc.*, 521 U.S. at 615, 117 S.Ct. 2231 (*quoting* Fed.R.Civ.P. 23 Advisory Committee's Notes)." *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 668 (C.D. Cal. 2009).

**i. <u>Common questions of law and fact predominate over individual issues.</u>**

The common questions of law and fact raised by this proposed Class overwhelm any individual issues. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Because proof of the claim revolves exclusively around Oberon's conduct— which is common to Plaintiffs and the Class— "[p]redominance is a test readily met in certain cases alleging consumer . . . fraud . . . ." *Amchem Prods., Inc.*, 521 U.S. at 625, 117 S.Ct. 2231(internal citations omitted); *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) ("the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable").

Finally, damage issues in this case are also predominantly common. The questions relevant to a GameSaver member's damages, *i.e.*, how much she is entitled to recover to compensate her for losses resulting from the system defects and hidden fees are common and should be decided in a single action. The losses can be ascertained by simple market surveys or through an administrative process. After

such information is obtained, the damage calculation is simply a matter of mathematics. The calculation of class-wide damages by means of a formula or guidelines is well-accepted in class action jurisprudence.

**ii. <u>A class action is the superior method for the fair and efficient adjudication of this controversy.</u>**

A class action is superior to other methods of litigation where, as here, "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency" and "no realistic alternative [to classwide treatment] exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-1235 (9th Cir. 1996). Rule 23(b)(3) lists the following factors to guide the superiority inquiry:

**1. The interest of individual class members in controlling the litigation.**

Individual prosecution of these claims is impractical—the cost of litigating a single case would exceed the potential return.

**2. <u>The extent and nature of litigation already commenced by the class.</u>**

Aside from the present case, Plaintiffs are aware of no other litigation concerning the System Defects and foreign transaction fees filed against Oberon Media in federal court. (Kim Decl., ¶ 31.)

**3. <u>The desirability of concentrating the litigation in a given form.</u>**

Concentrating the litigation in this Court will allow the litigation to proceed in an efficient manner without the risk of inconsistent outcomes. The Game Centers, Oberon games, and GameSaver program are readily available online and were heavily marketed and sold in California. Over 27,000 putative class members reside in California, making this state the single most important market for Oberon's business in this country.

**i. <u>The case is manageable as a class action.</u>**

This case presents no manageability issues that preclude certification. The critical issues for resolution arise from a common nucleus of operative facts. Proof of these issues as to any one class member is proof as to them all. The law of a

single state, New York, will apply. There is a choice of law clause in the terms of us of the GameSaver program which states: "This Agreement and the relationship between you and Oberon are governed by and construed in accordance with the laws of the State of New York, without regard to its principles of conflict of laws." (Kim Decl., Exhs. M, N, and O.) Moreover, Defendant Oberon has agreed in the Joint Rule 26(f) report that New York law governs this litigation.

## V. CONCLUSION

Substantially all of the liability and damage issues raised in this litigation are common to all claimants. The only practical and equitable means for resolving the issues raised by this case, and, specifically, by the System Defects in the Game Centers and Oberon's conduct in concealing them, is through a class action.

Dated: March 10, 2010

**MAKAREM & ASSOCIATES, APLC**
**MICHAEL H. KIM, PC**

By: //Ronald W. Makarem//
Attorneys for Plaintiffs BLAKE R. WILLIAMS and PEGGY J. MCGREGOR