1  KENDALL BRILL & KLIEGER LLP
   Richard B. Kendall (90072)
2    *rkendall@kbkfirm.com*
   Robert N. Klieger (192962)
3    *rklieger@kbkfirm.com*
   Gabriel D. Miller (243359)
4    *gmiller@kbkfirm.com*
   10100 Santa Monica Blvd., Suite 1725
5  Los Angeles, California 90067
   Telephone: 310.556.2700
6  Facsimile: 310.556.2705

7  Attorneys for Defendant
   Oberon Media, Inc.

8

9              UNITED STATES DISTRICT COURT

10     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  BLAKE R. WILLIAMS, an individual,        Case No. CV-09-8764 JFW (AGRx)
    and PEGGY J. McGREGOR, an
13  individual, for themselves and on behalf  **OBERON MEDIA, INC.'S**
    of all others similarly situated,         **OPPOSITION TO MOTION FOR**
14                                            **CLASS CERTIFICATION**
              Plaintiffs,
15                                            Date:   April 12, 2010
        v.                                    Time:   1:30 p.m.
16                                            Crtrm.: 16, Spring Street
    OBERON MEDIA, INC., a Delaware
17  corporation,
                                              The Honorable John F. Walter
18            Defendant.
19                                            [*Declarations of Jordan Goldstein, Ilan*
                                              *Rosenrauch and Gabriel D. Miller, filed*
20                                            *concurrently herewith*]
21

22

23

24

25

26

27

28

**Kendall Brill**
**& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................. 1

II. BACKGROUND ............................................................................. 2

III. ARGUMENT ................................................................................ 4

    A. None Of The Proposed Classes Are Ascertainable By Objective Evidence ............................................................................. 5

    B. Plaintiffs Do Not Meet All The Requirements Of Rule 23(a) ............ 11

        1. Plaintiffs Lack Typicality with Respect to All Classes ............. 11

        2. Plaintiffs and their Counsel are Inadequate Representatives ................................................................. 16

    C. Plaintiffs Cannot Satisfy The Requirements Of Rule 23(b)(3) ........... 17

        1. Common Questions of Law and Fact Do Not Predominate ...... 18

            (a) Common Questions of Law or Fact Do Not Predominate with Respect to Plaintiffs' Claims Under NYGBL § 349 ............................................. 19

                (i) Common Questions of Law Do Not Predominate .............................................. 19

                (ii) Common Questions of Fact Do Not Predominate .............................................. 20

            (b) Common Questions of Law or Fact Do Not Predominate With Respect to the Breach of Contract & Unjust Enrichment Claims ............................... 23

        2. A Class Action is Not the Superior Method of Adjudication ................................................................... 25

IV. CONCLUSION ............................................................................ 25

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page**

## CASES

." *Sweet v. Pfizer*, 232 F.R.F. 360, 3701 (C.D. Cal. 2005); ........................................ 24

*Alberghetti v. Corbis Corp.*, __ F.R.D. __, 2010 WL 517439, at *2 (C.D. Cal. Jan. 13, 2010), .......................................................................................... 22

*Auscape Int'l v. Nat'l Geo. Enters.*, 2003 WL 23531750, at *14 (S.D.N.Y. July 25, 2003) ............................................................................................ 29

*Betts v. Reliable Collection Agency*, 659 F.2d 1000, 1005 (9th Cir. 1981) ............... 5

*Bildstein v. Mastercard Int'l Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004 ......... 11

*Brissenden v. Time Warner Cable of N.Y. City*, 885 N.Y.S. 2d 879, 885–86 (N.Y. Sup. Ct. 2009) ................................................................................. 28

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y. 2d 382, 388 (1987) ............. 16

*Deitz v. Comcast Corp.*, 2007 WL 2015440 (N.D. Cal. July 11, 2007) ................... 28

*Drizin v. Sprint Corp.*, 785 N.Y.S. 2d 428, 429–30 (N.Y. App. 2004) ................... 24

*Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007) .............................. 5

*Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 574 (C.D. Cal. 2007) ................... 6

*Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 262 (E.D.N.Y. 2009) .................... 24

*Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 907 (N.D. Ill. 2008) ........................... 15

*Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ............................................................................... 6, 17

*Gest v. Bradbury*, 443 F.3d 1177 (9th Cir. 2006) ................................................... 18

*Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y. 2d 314, 325 (2002) ............... 14, 15

*Greenwood v. Compucredit Corp.*, 2010 WL 291842, at *7 (N.D. Cal. Jan. 19, 2010) ........................................................................................ 22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ................. 13, 17, 22

*Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc) ...................................................................................................... 18

*Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1163 (C.D. Cal. 2009) ..... 16

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) ................................................................................ 16, 18

*In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 380 (S.D.N.Y. 2000); ............... 20

*Kandel v. Brother Int'l Corp.*, __ F.R.D. __, 2010 WL 711853, at *1 (C.D. Cal. Feb. 1, 2010) ................................................................................ 5

*Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) ......................................... 30

*Keilholtz v. Lennox Health Prods., Inc.*, 2010 WL 668067, at *2 (N.D. Cal. Feb. 16, 2010) ................................................................................ 6

*Klein v. Robert's Am. Gourmet Food, Inc.*, 808 N.Y.S. 2d 766, 774 (N.Y. App. 2006) ................................................................................ 25

*Legge v. Nextel Cmmn's, Inc.*, 2004 WL 5235587, at *8 (C.D. Cal. June 25, 2004) ................................................................................ 13

*Mendoza v. Home Depot, U.S.A. Inc.*, 2010 WL 424679, at *7 (C.D. Cal. Jan. 21, 2010) ................................................................................ 20

*Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) ................................................................................ 28

New York Gen. Bus. Law § 350 ........................................................................ 2

New York General Business Law § 349 ................................................. 2, 14, 17, 23

*O'Connor v. Boeing N. Am.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) ..................... 6

*Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 447–48 (N.D. Cal. 2008) ................................................................................ 21

*Precision Safety Innovations, Inc. v. Branson Ultrasonic Corp.*, 2005 WL 5801513, at *11 (C.D. Cal. Aug. 4, 2005) .......................................... 3

*Ridge Meadows Homeowners' Assoc. v. Tara Dev'p Co.*, 665 N.Y.S. 2d 361 (N.Y. App. Div. 1997) ................................................................ 25

*Rodriguez v. Gates*, 2002 WL 1162675, at *3 (C.D. Cal. May 30, 2002) ............... 22

*Rodriguez v. Gates*, 2002 WL 1162675, at *8 (C.D. Cal. May 30, 2002) (stating same) ................................................................................ 7

*Samiento v. World Yacht Inc.*, 10 N.Y. 3d 70, 81 (2008) ..................................... 25

*Sanders v. Apple, Inc.*, __ F. Supp. 2d __, 2009 WL 150950, at *10 (N.D. Cal. Jan. 21, 2009) ................................................................... passim

*Schilling v. Transcor Am., LLC*, 2010 WL 583972, at *3 (N.D. Cal. Feb. 16, 2010) ................................................................................ 5, 7, 9, 13

*Small v. Lorillard Tobacco Co.*, 94 N.Y. 2d 43, 56 (1999) .................................... 25

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Sosna v. Iowa*, 419 U.S. 393, 403, 95 S. Ct. 553, 559, 42 L. Ed. 2d 532 (1975) ..... 15

*Spencer v. Beavex, Inc.*, 2006 WL 6500597, at *9 (S.D. Cal. Dec. 15, 2006)8, 11, 12

*Tidenberg v. Bidz.com*, 2010 WL 135580, at *2 (C.D. Cal. Jan. 7, 2008) ........ passim

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)............... 5, 24

*Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) ......... 5, 24, 30

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## I.    INTRODUCTION

Oberon Media, Inc. ("Oberon") is one of the world's leaders in the development and sale of multi-platform "casual" videogames.  Over the last few years, the Plaintiffs in this case allegedly purchased and downloaded a number of videogames from various websites that offered Oberon games.  In connection with their purchases and downloads, Plaintiffs enrolled in the "GameSaver" membership plan, which is Oberon's multiple-purchase discount program that allows participants to download one game per month at no additional charge and purchase games at a discounted price.  Each of the five Plaintiffs allegedly experienced some type of billing problem with his or her membership account or videogame purchase.  By this action, Plaintiffs attempt to parlay the alleged difficulties they experienced with their accounts into a nationwide class action based on seven proposed classes of Oberon customers.  However, Plaintiffs do not come close to satisfying the requirements for sustaining a class action with respect to *any* of the classes.

Specifically, the classes Plaintiffs seek to certify are unascertainable, the Plaintiffs' claims are not typical of the class members they seek to represent, the Plaintiffs and their counsel are inadequate class representatives, and Plaintiffs have not offered any explanation as to why common questions of law or fact predominate with respect to each proposed class.  There are three main deficiencies that permeate Plaintiffs' class certification arguments.  The first is that it is simply not possible to determine on a class-wide, objective basis whether the members of each class actually suffered the harm alleged by that class.  Second, even if it were possible to verify harm to the members of each class, it is not possible to determine on a class-wide, objective basis that Oberon actually caused the harm.  Third, Plaintiffs have defined the Classes in such a way that the Court would be required to make an individualized determination of the merits of each class member's claims, which would be infeasible and unmanageable.

Therefore, as fully demonstrated below, Plaintiffs' motion should be denied.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

## II.   BACKGROUND

Plaintiffs assert three claims against Oberon in connection with the problems they allegedly experienced with their GameSaver accounts.  Specifically, Plaintiffs allege that Oberon:  (1) caused them harm by engaging in "deceptive" conduct, in violation of New York General Business Law ("NYGBL") § 349, (2) breached its contracts with Plaintiffs, and (3) was unjustly enriched at Plaintiffs' expense.  *See generally* First Amended Complaint ("FAC") ¶¶ 53–85.

Based on these three claims, Plaintiffs seek to certify seven classes ("Class" or "Classes")[1]:  **Class 1** – "Failure to Deliver Monthly Subscription Game" **Class 2** – "Signed Up in Error"; **Class 3** – "Duplicate Membership"; **Class 4** – "System Billing Error";  **Class 5** – "Foreign Transaction Fee"; **Class 6** – "Automatic Renewal"; and **Class 7** – "Unable to Cancel."  FAC ¶ 46.  Plaintiffs propose to try all three claims with respect to Classes 1, 3, 4 and 5, and their § 349 and unjust enrichment claims with respect to Classes 2, 6 and 7—for a total of eighteen claims.[2]  Further, Plaintiffs only provide general descriptions of the Classes and the claims they are asserting on behalf of each Class.  Mot. 17–19.

Plaintiffs seek to certify five of their seven proposed Classes—1, 2, 3, 4, and 7—based on factual allegations concerning Oberon "system errors" and "user interface defects."  Mot. 6, 10–12.  But Plaintiffs' factual allegations have no

---

[1] It is not clear whether Plaintiffs seek to certify seven subclasses or fourteen subclasses, as they propose to bifurcate each subclass into two additional subclasses—one seeking damages, another seeking injunctive relief.  *See* Plaintiffs' Motion for Class Certification ("Mot.") 10–12.  For purposes of this opposition, Oberon will treat each of the seven subclasses as a single class, except in III.B.1, *infra*, where Plaintiffs' injunctive relief claims are specifically addressed.

[2] Plaintiffs' Motion for Class Certification suggests that Plaintiffs also assert a cause of action under NYGBL § 350, and includes proposed classes based on this alleged statutory violation, but the FAC does not include a § 350 claim.  Mot. 17–19.  Oberon, however, relies herein on the causes of action listed in the FAC.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   evidentiary support, because the deposition testimony and documentary evidence on

2   which they rely has not been properly filed with the Court. *See* Mot. 4–9 (citing

3   excerpts of the Goldstein Deposition that were filed improperly pursuant to Local

4   Rule 79-5.1 and rejected by the Court, *see* Dkt. No. 42).  Therefore, none of

5   Plaintiffs' factual allegations that purport to rely on this evidence should be given

6   any weight for purposes of this motion.[3]  *See Precision Safety Innovations, Inc. v.*

7   *Branson Ultrasonic Corp.*, 2005 WL 5801513, at *11 (C.D. Cal. Aug. 4, 2005)

8   (concluding that plaintiff failed to file with the Court deposition testimony cited in

9   its declaration and thus provided no evidence to support its assertions therein).

10       Even if Plaintiffs had provided evidentiary support for their factual

11   allegations concerning Oberon system errors and user interface defects, those

12   allegations would not support the certification of nationwide classes.  Oberon

13   readily acknowledges that it has discovered three "bugs" in its computer system that

14   have caused *some* GameSaver members to experience certain technical problems

15   with their service.  One such bug prevented Oberon's system from recognizing

16   certain GameSaver members as having GameSaver accounts, and as a result, some

17   of these members were unable to redeem their monthly games without being

18   charged.  Goldstein Decl. ¶ 5. Another bug caused the system to miscount the

19   number of months remaining on certain GameSaver memberships, resulting in some

20   members paying an extra month of membership fees.  *Id.* However, Oberon has

21   worked to isolate and eliminate both of these bugs, has closed all duplicate accounts,

22   and has issued refunds of the duplicate monthly membership fees to all individuals

23   who, to Oberon's knowledge, were affected thereby.  *Id.*

24

25       [3] Specifically, the testimony upon which Plaintiffs purport to rely but fail to
attach to their Motion includes testimony excerpted from the Goldstein Deposition,

26   pages 84–108, 132–45, 175–76, 205-07, 246-47, and Exhibit A from that deposition,
which reflects the number of current and past GameSaver members and numbers of

27   complaints received by Oberon concerning certain customer service-related issues.

28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

3

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The last software bug resulted in certain customers being unable to access their GameSaver accounts.  To date, Oberon has been working to isolate and correct the glitch.  *Id.* ¶ 6.  Oberon has refunded all customers who, to Oberon's knowledge, have been affected by this bug, Oberon will continue to do so.  *Id.*  Moreover, Oberon is unaware of *any* "system errors" that (as alleged by Plaintiffs) cause a customer to be enrolled as a GameSaver member without her consent (Class 2) or charge a customer multiple times for a single game purchase (Class 4).  *Id.* ¶¶ 8, 10.  Nor have Plaintiffs offered any evidence to support the claims upon which each of these Classes is defined or to demonstrate that common questions of fact predominate with respect to each Class.  Furthermore, no Plaintiff alleges or declares that he or she was "unable to cancel" his or her membership due to "a user-interface defect" (Class 7).

In connection with the remaining two Classes—Classes 5 and 6—Plaintiffs rely on the theory that Oberon harmed certain customers by failing to inform them that they *might* be charged a foreign transaction fee ("FTF") by the *customer's bank or credit card company (not by Oberon)* (Class 5), and that Oberon did not adequately disclose that a GameSaver membership converts to a month-to-month membership after a customer has satisfied her initial two-month, six-month or twelve-month term (Class 6).  FAC ¶¶ 16–18, 31–32.  However, as explained below, neither of these Classes is ascertainable, *see* III.A, *infra*, and individualized, customer-by-customer analyses would be required to try these Classes' claims, notwithstanding Plaintiffs' conclusory assertions to the contrary, *see* III.C.1, *infra*.

## III.   ARGUMENT

Plaintiffs bear the burden of demonstrating that class certification is warranted.  *See Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007).  To accomplish that, Plaintiffs' proposed Classes must first be properly defined and "objectively ascertainable."  *Schilling v. Transcor Am., LLC*, 2010 WL 583972, at *3 (N.D. Cal. Feb. 16, 2010).  Then, Plaintiffs are entitled to class certification *only*

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

4
OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  *if* they have established "the four prerequisites" of Rule 23(a) "and at least one of

2  the alternative requirements" of Rule 23(b).  *Valentino v. Carter-Wallace, Inc.*, 97

3  F.3d 1227, 1234 (9th Cir. 1996).  In addition, Plaintiffs must prove that *each* of their

4  proposed Classes independently satisfies these requirements.  *See Betts v. Reliable*

5  *Collection Agency*, 659 F.2d 1000, 1005 (9th Cir. 1981).

6         The Ninth Circuit has repeatedly explained that "the trial court must conduct

7  a *rigorous analysis* to determine whether the party seeking certification has met the

8  prerequisites of Rule 23."  *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1186

9  (9th Cir. 2001) (emphasis added).  Furthermore, while "courts must accept the

10  factual allegations in the complaint as true," they "are at liberty to consider evidence

11  which goes to the requirements of Rule 23 even though the evidence may also relate

12  to the underlying merits of the case."  *Kandel v. Brother Int'l Corp.*, __ F.R.D. __,

13  2010 WL 711853, at *1 (C.D. Cal. Feb. 1, 2010) (internal citations omitted).  To

14  that end, because class certification "involves considerations that are enmeshed in

15  the factual and legal issues comprising plaintiff's cause of action," *Gen. Tel. Co. of*

16  *the S.W. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982), "a

17  court must often look to evidence beyond the pleadings," *Evans v. IAC/Interactive*

18  *Corp.*, 244 F.R.D. 568, 574 (C.D. Cal. 2007) (internal citations omitted).

19         For the following reasons, Plaintiffs do not satisfy these requirements.

20  **A.  None Of The Proposed Classes Are Ascertainable By Objective Evidence**

21         As a threshold matter, before Plaintiffs can show that a Class has satisfied the

22  requirements of Rule 23, they "must first establish that a class does in fact exist" by

23  defining the Class such that it is "precise, objective, and presently ascertainable."

24  *O'Connor v. Boeing N. Am.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal

25  quotation and citation omitted).  Critically, the Class must be "a distinct group of

26  plaintiffs whose members can be identified with particularity by reference to

27  *objective criteria*."  *Keilholtz v. Lennox Health Prods., Inc.*, 2010 WL 668067, at *2

28  (N.D. Cal. Feb. 16, 2010) (internal quotations and citations omitted) (emphasis

**Kendall Brill**
**& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1    added); *see also Rodriguez v. Gates*, 2002 WL 1162675, at *8 (C.D. Cal. May 30,

2    2002) (stating same); *Schilling*, 2010 WL 583972, at *3 (denying certification as to

3    class whose membership was not "objectively ascertainable"). Moreover, "due to

4    notice requirements, class definitions of actions maintained under Rule 23(b)(3)"—

5    such as the one at bar—"command greater precision than those brought under Rule

6    23(b)(1) or (b)(2)." *O'Connor*, 184 F.R.D. at 319. Thus, the Classes must not be so

7    broadly defined that the Court must "make a determination of the merits of the

8    individual claims to determine whether a particular person is a member of the class."

9    *Tidenberg v. Bidz.com*, 2010 WL 135580, at *2 (C.D. Cal. Jan. 7, 2008) (internal

10   quotation and citation omitted). For the following reasons, none of Plaintiffs' seven

11   proposed Classes is objectively ascertainable.

12      ***Class 1.*** Class 1 is defined to include all GameSaver members who have been

13   unable to redeem the monthly videogame included in their memberships due to a

14   "system error." FAC ¶ 46. This is insufficient. First, it is not possible to determine

15   which GameSaver members have been "unable" to redeem their monthly games (as

16   opposed to, e.g., those who have forgotten or chosen not to do so). Plaintiffs are

17   correct that Oberon maintains records of the identities, payment transactions and

18   certain other events regarding its customers, Mot. 14, and Oberon does have a

19   record of the GameSaver members who redeemed games through their GameSaver

20   accounts, Goldstein Decl. ¶ 7. Oberon does not, however, have a record of

21   customers who have allegedly been unable to or had difficulty redeeming games

22   from its system. *Id.*

23      Second, even if it were possible to isolate only those members who were

24   unable to redeem a game, it would not be possible to determine on a class-wide

25   basis which of those members were unable to do so *because of* an Oberon system

26   error, as opposed to other reasons. For example, faulty Internet connections,

27   incompatible browsers, improperly set security settings, operating system

28   malfunctions or user errors can all cause problems for a customer trying to redeem

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

6

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   or download a videogame. *Id.* Litigating Class 1's claims would require a

2   customer-specific determination that it was Oberon's system error that caused the

3   problem. Individuals whose problems redeeming or downloading games were

4   caused by other factors, have thus suffered no Oberon-caused harm. Thus, Class 1

5   is unascertainable. *See Sanders v. Apple, Inc.*, __ F. Supp. 2d __, 2009 WL 150950,

6   at *10 (N.D. Cal. Jan. 21, 2009) (finding proposed class unascertainable because it

7   included "individuals who either did not see or were not deceived by [defendant's]

8   advertisements, and individuals who suffered no damages"); *Tidenberg,* 2010 WL

9   135580, at *2 (improper to include merits determination as part of class description).

10      ***Class 2.*** Class 2 is defined to include all individuals who were "signed up in

11   error" as GameSaver members. FAC ¶ 46. This Class is unascertainable because it

12   is not possible to determine by objective evidence which GameSaver members were

13   "signed up in error," as Oberon has no record of such occurrences, nor is Oberon

14   aware of any technological method for tracking them. Goldstein Decl. ¶ 8. *See*

15   *Spencer v. Beavex, Inc.*, 2006 WL 6500597, at *9 (S.D. Cal. Dec. 15, 2006) (finding

16   class unascertainable because defendant's records were not sufficiently detailed to

17   identify on a class-wide basis which plaintiffs had been harmed without "having to

18   answer numerous fact-intensive questions"). Furthermore, even if it were possible

19   to identify the GameSaver members who allege that they were "signed up in error,"

20   it is not possible to verify their claims in an objective way, especially not on a class-

21   wide basis. For example, once a game has been downloaded and the registration

22   key obtained, it cannot be returned to the seller. As a result, less than scrupulous

23   customers have an incentive to assert falsely that they were signed up in error to

24   renege on their membership commitments or to avoid making their required

25   monthly payments. And even if it were possible to identify the customers who truly

26   did not intend to enroll in the GameSaver program, there would be no objective,

27   class-wide method to determine that Oberon's actions or system *caused* that alleged

28   harm. For example, some customers may have hastily filled out and clicked through

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

7

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

the web pages in the purchasing process and, as a result, failed to read the language on those pages making it patently clear that, in exchange for receiving a discounted price, they were agreeing to a monthly membership with a minimum commitment. Goldstein Decl. ¶ 8. Such individuals may have enrolled unknowingly, but this was not *caused* by a system error.[4] *See Schilling*, 2010 WL 583972, at *4 (explaining that individualized fact-based inquiries as to whether plaintiffs have claims, which must be made on plaintiff-by-plaintiff basis, preclude finding of ascertainability); *Tidenberg*, 2010 WL 135580, at *2, *supra*.

 **Class 3.** Class 3 is defined to include all "GameSaver members who were charged for a second GameSaver subscription" because of a "system error."[5] FAC ¶ 46. Oberon acknowledges that, at one point in time, a computer bug prevented Oberon's system from recognizing the account log-in information for some of its GameSaver members, and a subset of these GameSaver members may have inadvertently enrolled in a second GameSaver account as a result. *See* II, *supra*. That bug has been fixed and all GameSaver members who, to Oberon's knowledge, were affected, have been issued refunds. *Id.* However, Class 3, as currently defined, is still unascertainable because there is no objectively verifiable way to determine whether a GameSaver customer who was charged for an additional GameSaver account suffered harm (e.g., some spouses share an email address and family members can validly decide to have more than one account). Goldstein Decl. ¶ 9. Indeed, there are alternate reasons why a customer might be charged for more

---

 [4] Depending on the circumstances, Oberon may allow such customers to rescind their memberships if they make that request prior to redeeming multiple games and agree to pay full price for any games purchased at a discount.

 [5] Class 3 also is unascertainable because it contains many of the same class members as Class 2, all of whom have the same alleged harm and damages—they both request refunds of the membership fees accounts they allegedly did not knowingly or willingly create. In fact, Williams conceded at her deposition that she is a member of both Classes. Miller Decl. ¶ 2.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

than one GameSaver account. *See Sanders*, 2009 WL 150950, at *10; *Tidenberg*, 2010 WL 135580 at *2.

**Class 4.** Class 4 is defined to include all customers "who were billed multiple times for one purchase" because of a "system error." FAC ¶ 46. This Class, too, is unascertainable. To Oberon's knowledge, there is no system error that causes a customer to be charged more than once for a single game purchase. Goldstein Decl. ¶ 10. There are, however, numerous reasons why this might happen unrelated to an Oberon "system error." For example, during the transaction process, if a customer repeatedly clicks on the submit payment button because of a slow Internet connection or other problem unrelated to Oberon's system leads her to assume that her order has not been received, this could cause her to be billed more than once for the purchase. *Id.* Additionally, if a customer purchases a game for herself and for a friend or family member, purchases a game a second time for use on her laptop or other computer, or purchases a game, forgets she has done so and purchases it again, that customer will be charged more than once for that game. *Id.* There is no objective, class-wide method, however, for determining why particular customers experienced multiple billings. *Id. See Spencer*, 2006 WL 6500597, at *9 (finding class unascertainable because there was no objective method for identifying class members who had actually been harmed); *Tidenberg*, 2010 WL 135580, at *2.

**Class 5.** Class 5 is defined to include all "GameSaver members and buyers of Oberon games who incurred a foreign transaction fee during the class period." FAC ¶ 46. Class 5 thus includes Oberon customers who were aware of the FTF and continued paying it, or otherwise have no objection to being charged the FTF—none of which have suffered harm. *See Bildstein v. Mastercard Int'l Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004) (noting that some customers may derive a benefit from a FTF and thus have not been harmed by having to pay the fee). But each customer's knowledge and opinion about being charged a FTF can only be determined on an individual basis and cannot be verified by objective evidence. Thus, the Class

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

9
OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   includes individuals who have suffered no injury and is therefore unascertainable.

2   *See Sanders*, 2009 WL 150950, at *10.  Furthermore, because Oberon does not

3   charge customers FTFs, Goldstein Decl ¶ 11, Oberon is does not have any records

4   identifying those customers who have incurred such fees in connection with Oberon

5   purchases, *id.*, nor do Plaintiffs suggest any method for identifying these customers.

6   *See Spencer*, 2006 WL 6500597, at *9.

7        ***Class 6***.  Class 6 includes all "GameSaver members whose GameSaver

8   membership[s] automatically renewed after the initial subscription term[s] ended

9   during the class period."  FAC ¶ 46.  This class, too, is unascertainable, as it

10  includes customers who have not been harmed—e.g., those who were fully aware

11  from the GameSaver Terms and Conditions that their memberships would continue

12  on a month-to-month basis after their initial terms expired, have no objection to that

13  policy or have benefited from that policy.  For example, that policy allows customer

14  to continue to purchase games at the discounted price without making another long-

15  term commitment.  Goldstein Decl. ¶ 12.  Oberon knows of no class-wide, objective

16  criteria for identifying which customers were unaware that their memberships

17  converted to month-to-month status after their initial term or who otherwise object

18  to that policy, *id.*, nor do Plaintiffs propose one.  This Class is unascertainable

19  because Plaintiffs cannot show that Oberon harmed the Class members on an

20  objective, class-wide basis.  *See Sanders*, 2009 WL 150950, at *10.

21        ***Class 7***.  Last, Class 7 is defined to include all GameSaver members who,

22  after they fulfilled their initial membership terms, were "unable to cancel" their

23  memberships "due to a system user-interface defect."  This Class is unascertainable,

24  because it is not possible to determine by objective evidence which GameSaver

25  members, if any, were "unable" to cancel their memberships, in contrast to those

26  customers who decided not to cancel their memberships or simply have not tried to

27  do so.  Goldstein Decl. ¶ 13.  *See Spencer*, 2006 WL 6500597, at *9.  Furthermore,

28  even if it were possible to identify the GameSaver members who tried and failed to

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

10

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   cancel their memberships, it is nonetheless impossible to determine *why* they failed

2   to do so or to verify their claims in an *objective* way, especially not on a class-wide

3   basis.  For example, some customers might falsely assert that they tried to cancel,

4   even if they simply forgot about the membership or intended to take advantage of

5   the account but never got around to doing so.  Thus, Class 7 is unascertainable.  *See*

6   *Sanders*, 2009 WL 150950, at *10; *Schilling*, 2010 WL 583972, at *3.

7        In sum, no Class is objectively ascertainable.

8   **B.   Plaintiffs Do Not Meet All The Requirements Of Rule 23(a)**

9        **1.   Plaintiffs Lack Typicality with Respect to All Classes**

10       Rule 23(a)(3) requires Plaintiffs' claims to be "typical of the claims . . . of the

11  class."  Plaintiffs' claims would be sufficiently "typical" if they were "reasonably

12  co-extensive with those of other class members; they need not be substantially

13  identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  To

14  prove typicality, "the party purporting to represent the class must show actual injury

15  to himself or herself in order to have standing to sue on behalf of the class."  *Legge*

16  *v. Nextel Cmmn's, Inc.*, 2004 WL 5235587, at *8 (C.D. Cal. June 25, 2004).

17       Plaintiffs' do not satisfy typicality with respect to *any* of the Classes.

18       ***All Classes & Plaintiffs' NYGBL § 349 Claim.***  Plaintiffs seek certification

19  based on their § 349 claim as to *all seven* Classes.  FAC ¶ 56–62.  It is well

20  established that claims under § 349 apply only to deceptive conduct or transactions

21  that occur within the boundaries of New York.  *See Goshen v. Mutual Life Ins. Co.*

22  *of N.Y.*, 98 N.Y. 2d 314, 325 (2002) ("[T]o qualify as a prohibited act under [§ 349],

23  the deception of a consumer must occur in New York."); *id.* at 324 ("hatching a

24  scheme or originating a marketing campaign in New York" are not actionable acts;

25  "the transaction in which the consumer is deceived must occur in New York").

26       None of the named Plaintiffs, however, is a New York resident, FAC ¶¶ 5–9,

27  nor has any of them asserted that he or she purchased or downloaded videogames

28  from Oberon, enrolled as a GameSaver member, or otherwise transacted business

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

11

1  with Oberon in New York. Moreover, even if Plaintiffs had made those allegations,

2  the facts compel the opposite conclusion. All of Plaintiffs' alleged videogame

3  purchases, downloads, GameSaver enrollments and Oberon account updates

4  occurred via the Internet. FAC ¶¶ 34–45. Each time the Plaintiffs visited an Oberon

5  game center website, they initially interfaced with a content distribution network

6  owned and operated by a third-party vendor through servers located in geographic

7  proximity to the Plaintiffs. Rosenrauch Decl. ¶ 3. Once Plaintiffs initiated

8  videogame purchases, videogame downloads, enrollment into the GameSaver

9  program, updates to their Oberon accounts, or any other account-based activity, they

10  were transferred from the localized third-party servers to Oberon servers, where the

11  purchase, download, enrollment or update processes were completed. *Id.* These

12  Oberon servers, however, are not located in New York. *Id.* Furthermore, whenever

13  Oberon processed a payment for Plaintiffs—in connection with either a single

14  videogame purchase or a GameSaver membership—these same Oberon servers

15  interfaced directly with Oberon's third-party payment-processing vendors, which

16  are not located in New York. *Id.* ¶ 4.

17      In sum, at no time did any transaction with Plaintiffs occur in New York, nor

18  have they even alleged otherwise. The only connection with New York is that

19  Oberon has its principal offices there, which is not enough to bring Plaintiffs' claims

20  within the purview of § 349. The court's decision in *Goshen* is instructive on this

21  score. There, the plaintiffs, who sought relief for allegedly deceptive acts under

22  § 349, were "consumers who subscribed to defendants' . . . Internet service" and the

23  defendants were "Delaware corporations with principal places of business in New

24  York and Virginia." 98 N.Y. 2d at 322.[6] The principal question before the court

25  was whether the defendants' allegedly deceptive conduct involving the sale of

---

[6] *Goshen* involved consolidated appeals. The parties described above were the parties in the companion case entitled *Scott v. Bell Atlantic Corp. Id.*

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   Internet services to the plaintiffs "occurred" in New York, such that § 349 would
2   apply.  Starting with the premise that § 349 "was not intended to police the out-of-
3   state transactions of New York companies," the court answered that question in the
4   negative, finding that the "out-of-state plaintiffs . . . cannot allege that they were
5   deceived in New York."  *Id.* at 326; *see also Gavin v. AT&T Corp.*, 543 F. Supp. 2d
6   885, 907 (N.D. Ill. 2008) (stating same principle and denying certification).  As
7   none of the Plaintiffs is a New York resident, and none purchased games or enrolled
8   in GameSaver within New York, none suffered a cognizable injury under § 349.
9   This precludes a finding of typicality with respect to any of the Classes as to
10  Plaintiffs' § 349 claim, because none has standing to bring that claim.  *See Sosna v.
11  Iowa*, 419 U.S. 393, 403, 95 S. Ct. 553, 559, 42 L. Ed. 2d 532 (1975) (a plaintiff
12  must be a member of the class she seeks to represent).

13      ***Classes 1, 3 & 6.***  Plaintiff Williams is the only Plaintiff who is alleged to
14  have claims typical to that of Classes 1, 3 and 6.  Mot. 21.  These Classes all assert
15  claims for unjust enrichment.  FAC ¶¶ 68–74.  However, Williams was a
16  GameSaver member, and thus was subject to the GameSaver Terms and Conditions.
17  Williams Decl. ¶ 3; Mot. 25.  It is well settled that a claim for unjust enrichment
18  "cannot lie where there exists between the parties a valid express contract covering
19  the same subject matter."  *Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152,
20  1163 (C.D. Cal. 2009) (internal quotation and citation omitted); *Clark-Fitzpatrick,
21  Inc. v. Long Island R. Co.*, 70 N.Y. 2d 382, 388 (1987) (stating same).  Therefore,
22  Williams cannot represent Classes 1, 3 or 6 with respect to the unjust enrichment
23  claim, because any alleged claim she has flows from her contract with Oberon.

24      Moreover, Class 6 consists of GameSaver members whose memberships
25  "automatically renewed after the initial subscription term ended."  FAC ¶ 46.
26  Williams, however, is not a member of this Class.  Neither the FAC nor Williams's
27  declaration allege that her membership was renewed or that she even satisfied her
28  initial membership term.  In fact, Williams enrolled as a twelve-month GameSaver

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

13

1   member on March 23, 2009, and all charges to her account ceased on December 2,

2   2009; thus, she never completed her term and her membership never "renewed."

3   Goldstein Decl. ¶ 15; Miller Decl. ¶ 2; *see In re Ditropan XL Antitrust Litig.*, 529 F.

4   Supp. 2d 1098, 1107 (N.D. Cal. 2007) ("[P]laintiffs who represent a class *must*

5   *allege and show that they personally have been injured*, not that injury has been

6   suffered by other, unidentified members of the class to which they belong and which

7   they purport to represent." (internal quotes and citation omitted)).

8         In sum, Williams's claims are not typical of the claims asserted by Class 1,

9   Class 3 *or* Class 6.  In fact, because NYGBL § 349 does not apply to Williams (she

10  testified that none of her transactions occurred in New York, Miller Decl. ¶ 2), she

11  has standing to litigate *only one of the three claims* asserted by each Class—the

12  breach of contract claim.  This is not sufficient to show that Williams's claims are

13  "reasonably co-extensive with those" of these Classes. *Hanlon*, 150 F.3d at 1020.

14  Nor does she (or any Plaintiff) have standing to represent Class 6 with respect to *any*

15  *claim*, because McGregor is the only Plaintiff who purportedly satisfied her mem-

16  bership term and she does not seek to represent Class 6, nor does she allege she was

17  unaware of or harmed by the "automatic renewal" policy.  McGregor Decl. ¶¶ 4–7.

18       ***Class 4.***  Plaintiff Schutz is the only proposed class representative for Class 4,

19  which consists of customers "who were billed multiple times for one purchase."

20  FAC ¶ 46.  Schutz, however, admits that at all relevant times she was a GameSaver

21  member, and that the extra charges she allegedly incurred were "charged for her

22  GameSaver subscription," Schutz Decl. ¶¶ 4–6, not for a "single game purchase,"

23  Mot. 18.  Thus, Schutz is not alleged to have suffered the same injury as that of the

24  members of Class 4.  Moreover, Schutz is foreclosed from representing Class 4 with

25  respect to the § 349 and unjust enrichment claims, because Schutz, like Williams,

26  never transacted with Oberon in New York and is a party to the GameSaver

27  membership agreement. *See supra*.  Thus, Plaintiffs cannot show typicality as to

28  Class 4 because the Class's claims are not "fairly encompassed by [Schutz's]

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

14

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    claims," *Falcon*, 457 U.S. at 156, and she cannot represent a class with respect to

2    claims she lacks standing to bring on her own.

3        ***Class 7.***  Last, all Plaintiffs contend they have claims typical to that of the

4    members of Class 7, Mot. 21, which includes "GameSaver members whose initial

5    membership term ended but were unable to cancel . . . because of a user-interface

6    defect," FAC ¶ 46.  But, *no Plaintiff* alleges that this actually happened to him or

7    her.  FAC ¶¶ 33–45.  In fact, McGregor is the only Plaintiff who purportedly

8    satisfied her initial membership term, as Schutz's and Lindsey's twelve-month

9    memberships began less than a year ago, Schutz Decl. ¶ 4; Lindsey Decl. ¶ 5, and

10   neither Parks nor Williams remained paying members for their full twelve-month

11   terms, Parks Decl. ¶ 8; Miller Decl. ¶ 2.  McGregor, however, does not allege that

12   she was unable to cancel her account, nor does she allege that she was prevented

13   from doing so because of a "user-interface defect."  McGregor Decl. ¶¶ 4–7.  What

14   is more, McGregor states that she seeks to represent Classes 2, 3 and 5 (not Class 7),

15   *id.*, and as explained below, she is not an adequate representative, *see* III.B.2, *infra*.

16       ***All Classes & Plaintiffs' Claim for Injunctive Relief.***  Last, Plaintiffs seek

17   injunctive relief with respect to *every* Class.  FAC ¶ 46.  In fact, Plaintiffs

18   apparently seek to certify a separate subclass for every Class on the theory that each

19   Class will seek injunctive relief.  *Id.*; Mot. 10–12.  However, Plaintiffs have not

20   even attempted to show that they have standing to seek injunctive relief.  To do so,

21   Plaintiffs must prove that they are "realistically threatened by a repetition of the

22   violation' for the relief to address their alleged injuries."  *Gest v. Bradbury*, 443

23   F.3d 1177, 1181 (9th Cir. 2006).  Not one of the Plaintiffs even alleges that he or

24   she will purchase games from Oberon in the future, and Williams expressly testified

25   that she would not be a future customer.  Miller Decl. ¶ 2.  This is not sufficient to

26   satisfy Plaintiffs' burden.  *Ditropan*, 529 F. Supp. 2d at 1107 (noting plaintiffs must

27   plead and prove standing); *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045

28   (9th Cir. 1999) (en banc) ("Unless the named plaintiffs are themselves entitled to

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  seek injunctive relief, they may not represent a class seeking that relief.").

2        **2.**    **Plaintiffs and their Counsel are Inadequate Representatives**

3        Rule 23(a)(4) permits the certification of a class action only if "the

4  representative parties will fairly and adequately protect the interests of the class."

5  Fed. R. Civ. P. 23(a)(4).  To meet this standard, Plaintiffs must demonstrate that

6  both they and their counsel will prosecute the action completely and vigorously on

7  behalf of the class.  *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  A

8  class representative, therefore must comply with all applicable rules, which includes

9  "subjecting themselves to discovery."  Manual for Complex Litigation, Fourth,

10  § 21.26; *see also Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y.

11  1976) (stating same principle).  Proposed class representatives, therefore, must make

12  themselves available for properly noticed depositions. *See McDaniel v. County of*

13  *Schenectady*, 2005 WL 1745566, at *3 (N.D.N.Y. July 21, 2005) (noting principle).

14        For more than a month, Plaintiffs Williams and McGregor refused to appear

15  for their noticed depositions.  In fact, Oberon twice noticed depositions for Williams

16  and McGregor, and both times their counsel confirmed that they would cooperate

17  with Oberon's counsel to schedule the depositions for mutually convenient dates

18  and times.  Miller Decl. ¶ 3.  That never happened.  Not until a week before

19  Oberon's deadline to file the instant brief did Plaintiffs finally offer dates to be

20  deposed—and then they offered *the last two business days* before the deadline,

21  which was plainly unreasonable and unworkable.  Miller Decl. ¶ 3.  Plaintiffs next

22  offered to stipulate to a three-day extension of Oberon's deadline—from March 22

23  to March 25—so the depositions could go forward on March 22 and 23.  Despite the

24  logistical challenges involved in taking the depositions on those dates, Oberon

25  agreed to the stipulation and the Court granted the extension (*See* Dkt. No. 40).

26        However, on Saturday, March 20, after Oberon had made travel arrangements

27  and reserved the court reporter for Monday's deposition of Plaintiff McGregor,

28  Plaintiffs' counsel informed Oberon's counsel that McGregor would not make

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

16

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    herself available for deposition on March 22, after all.  Miller Decl. ¶ 4.  Thus, to

2    this day, Oberon has still been unable to depose McGregor.  This is plainly

3    unacceptable, as Oberon is "entitled, and indeed required, to discharge [its]

4    obligation of due diligence to ascertain whether [Plaintiffs] do in fact meet the

5    qualifications for a Class Representative . . . as provided by Rule 23."  *In re Oxford*

6    *Health Plans, Inc.*, 191 F.R.D. 369, 380 (S.D.N.Y. 2000); *Mendoza v. Home Depot,*

7    *U.S.A. Inc.*, 2010 WL 424679, at *7 (C.D. Cal. Jan. 21, 2010) (holding that a

8    proposed class representative, who had "been unwilling to appear for deposition,

9    despite Defendant's alleged flexibility in scheduling," had "not demonstrated a

10   commitment to completely and vigorously prosecute" the action).

11          There are serious questions as to the adequacy of Plaintiffs' counsel, as well,

12   as they have not followed basic orders and rules of this Court.  For example, in

13   connection with Plaintiffs' Motion for Class Certification, Plaintiffs' counsel

14   included in their public filing several documents and pieces of information that

15   Oberon unequivocally designated as confidential, pursuant to the Order Regarding

16   Confidentiality of Documents and Information, which Judge Rosenberg issued in

17   this case on March 4, 2010 (*See* Dkt. No. 23).  By disclosing this confidential

18   information publicly, rather than by filing their papers in a redacted form and in a

19   manner otherwise consistent with Local Rule 75-1, Plaintiffs' counsel violated

20   Paragraphs 2(b), 5, 8, 10(i) and 12 of the Order.  What is more, when Oberon's

21   counsel brought it to the attention of Plaintiffs' counsel that they had violated the

22   Order, and demanded that they take immediate remedial action, Plaintiffs' counsel

23   did nothing.  Miller Decl. ¶ 5.  Last, Plaintiffs' counsel failed to follow the Local

24   Rules in connection with filing their "Application to File Under Seal" documents in

25   support of Plaintiffs' Motion for Class Certification, and as a consequence, the

26   Motion, as noted above, significantly lacks evidentiary support.  *See* II, *supra*.

27   **C.    Plaintiffs Cannot Satisfy The Requirements Of Rule 23(b)(3)**

28          Even if Plaintiffs had satisfied the requirements of Rule 23(a) (they have not),

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  they still must prove that each class is certifiable under Rule 23(b)(3).  To do so,

2  Plaintiffs "must show that common questions of law and fact predominate over any

3  questions affecting only individual members" and that "a class action is superior to

4  other available methods for fairly and efficiently adjudicating the controversy,"

5  *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 447–48 (N.D. Cal. 2008), with

6  respect to *each Class* they seek to certify, *see* Fed. R. Civ. P. 23(c)(5).  Plaintiffs

7  cannot satisfy either of these requirements with respect to *any* Class.[7]

8        **1.**   **Common Questions of Law and Fact Do Not Predominate**

9       "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

10  sufficiently cohesive to warrant adjudication by representation," *id.* at 623, with a

11  focus "on the relationship between the common and individual issues," *Hanlon*, 150

12  F.3d at 1022.  In evaluating predominance, "courts must identify the issues involved

13  in the case and determine which are subject to generalized proof, and which must be

14  the subject of individualized proof."  *Greenwood v. Compucredit Corp.*, 2010 WL

15  291842, at *7 (N.D. Cal. Jan. 19, 2010) (internal quotation and citation omitted).

16       In the two paragraphs that Plaintiffs devoted in their Motion to addressing

17  Rule 23(b)(3)'s predominance requirement, Plaintiffs failed to provide *any*

18  substantive or legal reasoning to support their assertion that common questions of

19  law or fact predominate with respect to each of their seven proposed Classes;

20  instead, Plaintiffs merely recited the relevant legal standard.  Mot. 23–24.  However,

21  Plaintiffs bear the burden of making "a *prima facie* showing" that they have

22  satisfied the requirements of Rule 23(b)(3), *Alberghetti v. Corbis Corp.*, __

23  F.R.D. __, 2010 WL 517439, at *2 (C.D. Cal. Jan. 13, 2010), and "[t]o meet that

24  burden, [Plaintiffs] must provide facts to satisfy these requirements; simply

25  repeating the language of the rules is insufficient," *Rodriguez v. Gates*, 2002 WL

26  1162675, at *3 (C.D. Cal. May 30, 2002).  Because Plaintiffs have failed to meet

27

---

[7] Plaintiffs do not seek certification under Rule 23(b)(1) or (2).  Mot 22.

28

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   their *prima facie* burden under Rule 23(b)(3), their motion should be denied.

2       Moreover, for the reasons explained below, Plaintiffs cannot show (even if

3   they had tried) that common questions of law or fact predominate with respect to

4   any Class. Plaintiffs have proposed seven Classes and alleged three causes of

5   action—for violation of NYGBL § 349, breach of contract and unjust enrichment—

6   apparently based on a theory that questions of law or fact as to all of their causes of

7   action predominate with respect to most or all of the Classes. Given Plaintiffs'

8   imprecise and confusing approach, predominance will be addressed below with

9   respect to each claim, rather than on a repetitive class-by-class basis.

10          **(a)     Common Questions of Law or Fact Do Not Predominate**

11                    **with Respect to Plaintiffs' Claims Under NYGBL § 349**

12      Plaintiffs argue that common questions of law or fact related to whether

13  Oberon has violated § 349 predominate with respect to *all* Classes. Mot. 17–20.

14  For the following three reasons, Plaintiffs are incorrect.

15          **(i)     <u>Common Questions of Law Do Not Predominate</u>**

16      As explained above, § 349 only applies to conduct or transactions that

17  occurred in New York, but none of the Plaintiffs purchased, downloaded or

18  otherwise transacted business with Oberon in New York. *See* III.B.1, *supra*. That

19  means that none has standing to bring a § 349 claim on behalf of any Class, *id.*, and

20  that the vast majority of each Class will not have a § 349 claim either, because the

21  vast majority of Oberon's customers reside outside New York, Goldstein Decl. ¶ 16.

22      Plaintiffs pleaded their first cause of action, however, under both § 349 and

23  "substantially similar laws of other states in which Defendant offers its online game

24  services." Plaintiffs might argue, therefore, that their Classes should be certified

25  with respect to claims under laws similar to § 349. But this argument lacks merit.

26  Plaintiffs failed to identify *any* "substantially similar laws" or show that common

27  questions of law and fact would predominate with respect to claims tried *under such*

28  *laws*. Thus, Plaintiffs have not met their *prima facie* burden. Indeed, "[t]he Ninth

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

19
OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  Circuit has clearly stated that plaintiffs seeking certification of a nationwide class in

2  which numerous state laws may apply bear the burden of demonstrating a trial plan.

3  In their Motion, Plaintiffs gave absolutely no indication as to the proper application

4  of numerous state laws." *Sweet v. Pfizer*, 232 F.R.F. 360, 3701 (C.D. Cal. 2005);

5  *Valentino*, 97 F.3d at 1234 (9th Cir. 1996) (it is an abuse of discretion to certify

6  class if plaintiffs do not show how trial could be conducted).

7       Moreover, Oberon has customers in every state and Plaintiffs have defined

8  the Classes so broadly, *see* III.A, *supra*, that the Classes are likely to include

9  members from every state.  Therefore, to try these claims, the Court would be

10  required to evaluate every Class's claims with respect to each state's laws.  This is

11  unmanageable: "Understanding which law will apply before making a

12  predominance determination is important when there are variations in applicable

13  state law.  Where the applicable law derives from the law of the 50 states, . . .

14  differences in state law will compound the disparities among class members from

15  the different states." *Zinser*, 253 F.3d at 1189.  Indeed, courts have refused to

16  certify classes in these circumstances, specifically in the context of claims brought

17  under § 349.  *See, e.g., Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 262

18  (E.D.N.Y. 2009) (explaining that, "while some of the class members accepted"

19  defendant's internet user agreement "in New York, most of them accepted it in

20  another state," and because § 349 was not available to the majority of the class

21  members, class certification was denied); *Drizin v. Sprint Corp.*, 785 N.Y.S. 2d 428,

22  429–30 (N.Y. App. 2004) (denying certification under similar facts, and opining that

23  "[m]aintenance of a nationwide class action on these claims would also be

24  unmanageable inasmuch as the trier of fact would be required to engage in the task

25  of distilling the laws of the 50 states"); *Klein v. Robert's Am. Gourmet Food, Inc.*,

26  808 N.Y.S.2d 766, 774 (N.Y. App. 2006) (denying certification on same basis).

27       **(ii)   Common Questions of Fact Do Not Predominate**

28  To prove their claim under § 349, Plaintiffs must establish that Oberon

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

20

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   intended to deceive them by engaging in materially deceptive practices, was

2   successful in doing so, and caused them harm as a result of the deception. *See*

3   *Samiento v. World Yacht Inc.*, 10 N.Y. 3d 70, 81 (2008); *Small v. Lorillard Tobacco*

4   *Co.*, 94 N.Y. 2d 43, 56 (1999). Not only will Plaintiffs be unable to make such a

5   showing, they cannot do so on a class-wide basis, because common questions of fact

6   do not predominate with respect to *any* of the Classes.[8]

7         For example, for Classes 1, 2, 3, 4 and 7, an individualized, customer-by-

8   customer inquiry would be required to determine whether each customer was

9   harmed—i.e., whether she actually had difficulty redeeming a monthly game (Class

10  1), was enrolled as a GameSaver member without consenting (Class 2), did not want

11  a second GameSaver membership (Class 3), did not intend to purchase the same

12  game twice (Class 4), or was truly unable to cancel his or her GameSaver

13  membership (Class 7). *See* III.A, *supra*. Furthermore, even if it were possible to

14  identify customers who suffered harm in each of these Classes, an individualized

15  customer-by-customer inquiry also would be required to determine whether

16  Oberon's acts or omissions, rather than some other factor, caused each customer's

17  alleged harms—i.e., whether the customer entered incorrect log-in information or

18  experienced a non-Oberon-related computer or connection problem when trying to

19  redeem a game (Classes 1 and 3), failed to read the language on the web pages

20  during the enrollment process describing the GameSaver program or decided later

21  that she did not want to be a member (Class 2), inadvertently submitted her payment

22

---

23   [8] As a threshold matter, Plaintiffs assert that "proving a violation" of § 349

24   would be "straightforward" because § 349(h) "allows consumers to sue for $50.00"

per alleged violation, which also may be trebled upon a showing of intent. Mot. 16;

25   FAC ¶ 64. Plaintiffs are clearly wrong—the $50 statutory penalty and treble

damages provision are *not applicable* in a class action. *See* N.Y. CPLR § 901(b);

26   *Ridge Meadows Homeowners' Assoc. v. Tara Dev'p Co.*, 665 N.Y.S. 2d 361 (N.Y.

27   App. Div. 1997) ("[P]laintiffs are barred by CPLR 901(b) from maintaining a class

action for the minimum and treble damages imposed by section 349(h).").

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  information multiple times (Class 4), or forgot to cancel her membership (Class 7).

2  *Id.* This is especially true with respect to Class 7, because Plaintiffs allege that

3  customers have been unable to cancel their memberships because they are unable to

4  navigate through the cancellation process on various Oberon sites, FAC ¶¶ 28–29,

5  yet Oberon sells its games through a number of different web sites.  Goldstein Decl.

6  ¶¶ 17–24.  Each web site has a unique appearance, and the substance and format of

7  the content on those sites, including the content related to the cancellation process,

8  varies from one to the next and over time.  *Id.*

9         Litigating the claims for Class 5 (seeking recovery for FTFs) also would be

10  unmanageable.  As explained above, many customers who were charged FTFs (and

11  are thus members of Class 5) may have known they would incur the fees before they

12  made the game purchases or later knew they had incurred the fees but had no

13  objection.  *See* III.A, *supra.*  Thus, Plaintiffs must do more than merely prove that a

14  customer paid an FTF to prove that a customer was actually harmed.  *Id.*  What is

15  more, even if every class member had been harmed by paying the FTF, a customer-

16  by-customer inquiry would still be required to determine whether Oberon actually

17  *caused* the injury to each class member.  This would be very difficult to do on a

18  class-wide basis.  Oberon used a variety of different methods at different times on

19  different websites for notifying its customers that their transactions were being

20  processed through an international payment-processing entity, Goldstein Decl.

21  ¶¶ 18–19, so it would be necessary to determine which disclosures on which

22  websites at which times each customer viewed *and* how each customer interpreted

23  those disclosures, to determine whether Oberon actually caused her harm.

24         Common questions of fact do not predominate with respect to Class 6

25  ("automatic renewal"), either.  Plaintiffs are unable to show that Oberon caused

26  actual harm to the members of Class 6 without engaging in a customer-by-customer

27  inquiry to prove that each customer whose GameSaver membership converted into a

28  month-to-month subscription suffered harm—i.e., that she did not want or enjoy the

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

22

1  benefits of a month-to-month membership—*and* that Oberon caused the harm—i.e.,

2  that she was unaware of the renewal policy because of Oberon's allegedly

3  inadequate disclosure.[9]  The latter would be especially difficult to prove on a class-

4  wide basis given that the substance and format of the websites through which

5  Oberon sells its games, the specific disclosures highlighted on the purchase options

6  page, and the terms of the GameSaver agreement itself, have varied.  *See supra*;

7  *Brissenden v. Time Warner Cable of N.Y. City*, 885 N.Y.S. 2d 879, 885–86 (N.Y.

8  Sup. Ct. 2009) (denying certification to class alleging § 349 claim based on

9  defendant's practice of providing allegedly unnecessary products to its customers

10  because there were too many customer-specific questions of fact, such as whether

11  each customer wanted or benefited from the product); *Deitz v. Comcast Corp.*, 2007

12  WL 2015440 (N.D. Cal. July 11, 2007) (denying class certification as to similar

13  claims brought under Cal. Bus. & Prof. Code § 17200, because "[i]t would be im-

14  possible to determine, on class-wide proof, whether all subscribers were harmed").

15      **(b)**    **Common Questions of Law or Fact Do Not Predominate With**

16          **Respect to the Breach of Contract & Unjust Enrichment Claims**

17      Plaintiffs purport to bring their breach of contract claim on behalf of Classes

18  1, 3, 4 and 5, FAC ¶¶ 80–82, but Plaintiffs cannot show that common questions of

19  law or fact predominate with respect to that claim for at least two reasons.

20      First, under New York law—which, as Plaintiffs admit, applies to GameSaver

21  members by virtue of a choice-of-law provision in the GameSaver Terms and

22  Conditions ("T&C"), Mot. 25—a plaintiff must prove, *inter alia*, that a defendant

23      [9] Plaintiffs allege that converting a GameSaver membership into a month-to-
24  month membership upon the completion of the initial term is a violation of N.Y.
    Gen. Oblig. Law § 5-503(2). Mot. 16. Plaintiffs seem to be referring to § 5-903(2),
25  not § 5-503(2). Furthermore, while Plaintiffs' quote liberally from § 5-903, they
26  neglect to mention the sentence that *explicitly excludes* Oberon's month-to-month
    policy: "Nothing herein contained shall be construed to apply to a contract in which
27  the automatic renewal period specified is one month or less." *Id.* § 5-903(3).

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

23

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  breached the contract and that the breach caused damage to the plaintiff. *See Nat'l*
2  *Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004).
3  Common questions of fact would not predominate with respect to Classes 1 and 5,
4  because, as explained above, proving on a class-wide basis that Oberon—rather than
5  some other factor—actually caused the harm allegedly suffered by the members of
6  those Classes would be impossible, *see* III.A, *supra*; *Sterling*, 392 F.3d at 526
7  ("Causation is an essential element of damages in a breach of contract action.").

8       Second, Plaintiffs have failed even to identify the specific terms of the
9  contract Oberon allegedly breached or that all Class members were bound to the
10 same contract with the same terms. As explained above, however, the T&C has
11 varied across websites and over time, which makes breach much more difficult to
12 prove on a class-wide basis. *See Auscape Int'l v. Nat'l Geo. Enters.*, 2003 WL
13 23531750, at *14 (S.D.N.Y. July 25, 2003) ("[A] class action is inappropriate given
14 that the resolution of the claims asserted here require a plaintiff-by-plaintiff
15 determination of the contractual rights conveyed" to the parties). In addition, if any
16 customer has failed to make a payment or update her account information (which
17 Williams conceded she failed to do, Miller Decl. ¶ 2), that customer would have
18 breached the agreement and could be precluded from recovering under this claim.

19      Plaintiffs' claim for unjust enrichment suffers from similar defects. First,
20 Plaintiffs argue that members of all the Classes have a claim for unjust enrichment.
21 FAC ¶¶ 68–74. However, a claim for unjust enrichment is unavailable where there
22 exists between the parties a valid express contract covering the same subject matter,
23 *see* III.B.1, *supra*, and because Classes 1, 3, 5, 6 and 7 all are limited to customers
24 who agreed to the T&C, unjust enrichment is unavailable to those class members.

25      Second, for those members of Classes 2 and 4 who are not bound to the T&C,
26 New York law does not apply to their claims because they never agreed to the New
27 York choice-of-law provision contained therein. Thus, Plaintiffs must engage in a
28 choice of law analysis with respect to *each* claim of *each* Class under *every* state's

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

24

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  laws, III.C.1.a.i, *supra* —which they have not done.  The Ninth Circuit explained:

2      [Plaintiffs] must apply California's three-part conflict test to each non-
3      forum state with an interest in the application of its law.  [B]ecause
    [Plaintiffs] seek[] certification of three separate claims . . . this conflicts
    test must be applied to each claim upon which certification is sought.

4  *Zinser*, 253 F.3d at 1188.

5      Third, even if it were assumed that New York law did apply, "to prevail on a

6  claim for unjust enrichment in New York, a plaintiff must establish (1) that the

7  defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good

8  conscience require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir.

9  2000) (internal quote omitted).  For the Plaintiffs to prove that Oberon benefitted at

10  Plaintiffs' expense, Plaintiffs must prove with respect to each Class that all class

11  members actually suffered remediable harm caused by Oberon.  For reasons already

12  explained, this is not possible to prove on a class-wide basis.  *See* III.A, *supra*.

13      **2.**     **A Class Action is Not the Superior Method of Adjudication**

14      As explained, trying Plaintiffs' claims on a class-wide basis would be

15  unmanageable, as the Classes are unascertainable and litigation would require

16  extensive inquiries into the specific circumstances pertaining to causation of each

17  class member's alleged harms.  For this reason alone, a class action is not a superior

18  method of adjudication.  *Zinser*, 253 F.3d at 1192 ("If each class member has to

19  litigate numerous and substantial separate issues to establish his or her right to

20  recover individually, a class action is not 'superior.'").

21      **IV.**   **CONCLUSION**

22      For the foregoing reasons, Oberon respectfully requests that the Court deny

23  Plaintiffs' motion for class certification in its entirety.

24  Dated: March 25, 2010         KENDALL BRILL & KLIEGER LLP

25

26

27             By:    /s/ Gabriel D. Miller
                Attorneys for Defendant
28                  Oberon Media, Inc.

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

25

OBERON MEDIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

## PROOF OF SERVICE

2 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3        At the time of service, I was over 18 years of age and **not a party to this action.** I am employed in the County of Los Angeles, State of California. My
4 business address is 10100 Santa Monica Blvd., Suite 1725, Los Angeles, California 90067.

5        On March 25, 2010, I served true copies of the following documents
6 described as:

7        1. OBERON MEDIA, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION;
8
9        2. DECLARATION OF JORDAN GOLDSTEIN IN SUPPORT OF OBERON MEDIA, INC.'S OPPOSITION TO MOTION FOR CLASS-CERTIFICATION;
10
11        3. DECLARATION OF IIAN ROSENRAUCH IN SUPPORT OF OBERON MEDIA, INC.'S OPPOSITION TO MOTION FOR CLASS-CERTIFICATION; and
12
13        4. DECLARATION OF GABRIEL D. MILLER IN SUPPORT OF OBERON MEDIA, INC.'S OPPOSITION TO MOTION FOR CLASS-CERTIFICATION
14

15 on the interested parties in this action as follows:

16 Ronald W. Makarem, Esq.                Michael H. Kim, Esq.
Marni B. Folinsky, Esq.                MICHAEL H. KIM, PC
17 Jean-Paul Le Clercq, Esq.                3699 Wilshire Blvd., Suite 860
MAKAREM & ASSOCIATES, APLC        Los Angeles, CA 90010
18 11601 Wilshire Blvd., Suite 2440        mkim@mhklawyers.com
Los Angeles, CA 90025
19 makarem@law-rm.com
folinsky@law-rm.com
20 leclercq@law-rm.com

21        **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I certify that the
foregoing document(s) is being filed electronically by using the CM/ECF system.
22 As such, the document(s) will be served electronically on all interested parties
whose attorneys are registered CM/ECF users and have consented to electronic
23 service.

24        I declare under penalty of perjury under the laws of the State of California
that the foregoing is true and correct.
25

26        Executed on March 25, 2010, at Los Angeles, California.

27

28                                                Gabriel D. Miller

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

45578.1