**MAKAREM & ASSOCIATES, APLC**
Ronald W. Makarem, Esq. (State Bar No. 180442)
Marni B. Folinsky, Esq. (State Bar No. 209880)
11601 Wilshire Boulevard, Suite 2440
Los Angeles, California 90025-1760
Telephone: (310) 312-0299
Facsimile: (310) 312-0296
Email: makarem@law-rm.com
Email: folinsky@law-rm.com

Michael H. Kim, Esq. (State Bar No. 200792)
**MICHAEL H. KIM, P.C.**
3699 Wilshire Boulevard, Suite 860
Los Angeles, California 90010
Telephone: (213) 639-2900
Facsimile: (213) 639-2909
Email: mkim@mhklawyers.com

Attorneys for Plaintiffs
BLAKE R. WILLIAMS and PEGGY J. MCGREGOR

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

BLAKE R. WILLIAMS, an individual, and PEGGY J. McGREGOR, an individual, for themselves and on behalf of all others similarly situated,

Plaintiffs,

v.

OBERON MEDIA, INC., a Delaware corporation; and DOES 1 through 10, Inclusive,

Defendants.

Case No. CV 09-8764-JFW (AGRx)

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Date: April 12, 2010
Time: 1:30 p.m.
Courtroom: 16
The Honorable John F. Walter

Complaint filed: November 30, 2009

# TABLE OF CONTENTS


A. ASCERTAINABILITY………………………………………………. 1

B. TYPICALITY……………………………………………………… 6

1. All Classes and Plaintiffs' NYGBL §349……………………… 6

2. Classes 1 and 3………………………………………………. 7

3. Class 6…………………………………………………...8

4. Class 4: System Billing Error……………………………………8

5. All Classes and Plaintiffs' Claims for Injunctive Relief…………9

C. ADEQUACY ……………………………………………………. 9

D. PREDOMINANCE……………………………………………..10

1. Common Questions Predominate…………………………….. 10

2. Choice of Law Clause Dictates that New York Law Applies……11

# TABLE OF AUTHORITIES

## CASES

*Abogados v. AT & T*, 223 F.3d 932, 934 (9th Cir.2000). ………………….. 12

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972) ………………………………………… 3

*Bildstein v. MasterCard International, Inc*., 2005 WL 1324972, *4 (S.D.N.Y. 2005) ……………………………… 6

*Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir.2005). …………. 11

*Goldman v. Simon Property Group, Inc*., 58 A.D.3d 208, 218-219 (2008)... 7-8

*Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (2002)……. 5

*Gulf Ins. Co. v. Kanen*, 13 A.D.3d 579, 580 (2004)………………………... 7

*Gutierrez v. Kovacevich "5" Farms,* No. CIV-F-04-5515OWWDLB, 2004 WL 3745224, at *9 (E.D.Cal. 2004) ……………………………………………………………. 1

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-1023 (1998)…………….. 10

*In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 305 (E.D.N.Y.2006) ……………………………….. 11

*In re Saturn L-Series Timing Chain Product Liability Litig.*, 2008 WL 4866604 (D.Neb. 2008)……………………………………… 11

*Kurihara v. Best Buy Co., Inc*., 2007 WL 2501698, at *10 (N.D.Cal. 2007)…………………………… 1

*Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir.1987). …………………………………... 11

*Lonner v. Simon Property Group, Inc.*, 57 A.D.3d 100, 108 (2008) ………. 8

*Lymburner v. U.S. Financial Funds, Inc.*, 2010 WL 335791, *7 (N.D.Cal. 2010)………………………………….. 4

*Medimatch, Inc. v. Lucent Techs., Inc.*,

120 F.Supp.2d 842, 862 (N.D.Cal.2000) ………………………………… 12
*Mountz v. Global Vision Prods*, 3 Misc.3d 171 (2003) …………………… 6
*Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 489 (C.D.Cal.2006)……. 1
*People by Vacco v. Lipshitz*,
174 Misc.2d 571, 580, 663 N.Y.S.2d 468 (1997)………………………. 5
*People ex rel. Spitzer v. Telehublink Corp.*,
301 A.D.2d 1006, 1009 (2d Dept.2003)……………………………….. 5
*Plascencia v. Lending 1st Mortgage*,
259 F.R.D. 437, 447 (N.D.Cal.2009).. ………………………………… 3
*Roberts v. Heim*, 670 F.Supp. 1466, 1493 (N.D.Cal.1987)……………….. 11
*Steinberg v. Nationwide Mutual Ins. Co.*,
224 F.R.D. 67, 76 (E.D.N.Y.2004) …………………………………….. 10
*Telephone Secretarial Service v. Sherman*,
284 N.Y.S.2d 384, 385-86 (N.Y.App.Div.1967) ………………………. 4
*Wang v. Chinese Daily News, Inc.*,
231 F.R.D. 602, 613 (C.D.Cal.2005) ………………………………….. 1

**STATUTES**

Fed.R.Civ.P. 23(c) (1)(C)……………………………………………… 9
N.Y. Gen. Bus. Law § 349……………………………………………….. 5, 6, 12
N. Y. Civil Practice Law & Rules §4544……………………………………. 7
N.Y. Gen. Obligs. Law §5-903 …………………………………………… 4,8

**A. ASCERTAINABILITY**

Class certification is proper where there are "plausible class-wide methods of proof available to prove their claims." *Negrete v. Allianz Life Ins. Co.,* 238 F.R.D. 482, 489 (C.D.Cal.2006). The fact that individualized inquires as to damages are required does not defeat class certification. *Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602, 613 (C.D.Cal.2005) ("the amount of damages is invariably an individual question and does not defeat class action treatment"); *Gutierrez v. Kovacevich "5" Farms,* No. CIV-F-04-5515OWWDLB, 2004 WL 3745224, at *9 (E.D.Cal. 2004) ("courts routinely find Rule 23(b)(3)'s predominance requirement satisfied despite the need for individualized damage determinations when the fact of injury is common"). Rather, class certification is warranted where the plaintiff points to a specific company-wide practice that allegedly gives rise to consistent liability. *Kurihara v. Best Buy Co., Inc*., 2007 WL 2501698, at *10 (N.D.Cal. 2007)

Here, classwide inquiries into liability predominate. The focus of this class action is on three areas: (1) Oberon's failure to prevent and disclose the system errors causing harm to Class members (Classes 1-4, 7), (2) Oberon's failure to disclose the Foreign Transaction Fee ("FTF") (Class 5); (3) Oberon's enforcement of an illegal automatic renewal clause (Class 6). All of the inquiries are focused on Oberon's conduct.

In its opposition, Oberon argues that the Classes are not ascertainable because it cannot be determined based on "objective" evidence whether the system errors caused harm to the Class members. This argument has no merit because Oberon has shown that the system errors can be identified and isolated by reviewing its system records and traced to specific individuals who are harmed by them:

<u>Class 1</u> deals with a system error in Oberon's game service system that results in GameSaver members being unable to redeem their monthly games. Defendant argues that "it would not be possible to determine on a class-wide basis

which of those members were unable to [redeem a game]," because there are myriad of other technical reasons that could result in the same failure. (Opp., 6:12-7:9.) That argument is not supported by Mr. Goldstein's own declaration and deposition testimony. Mr. Goldstein states in his declaration:

> Oberon has discovered three "bugs" in its computer system that have **caused** some of its customers to experience certain technical problems with their service related to the allegations in this case. One such bug prevented Oberon's system from recognizing **certain GameSaver members** as having GameSaver accounts, and **as a result**, some of these members were unable to "redeem" their monthly games.

(Goldstein Decl., ¶5.) Thus, by Mr. Goldstein's own admission, Oberon has been able to isolate the system error and determine which of its customers were affected by this system error. Again, Mr. Goldstein testified to this specific fact at his deposition. (**Goldstein Depo., 144:11-145:22.)** According to Mr. Goldstein, Oberon's "technical people" located and isolated the system error and ran a program that determined which individuals were affected by it. ***Ibid***.

<u>Class 2</u> deals with a system error in the game service system that causes erroneous GameSaver Membership sign-ups. This system error is a subset of the same system-wide error that causes duplicate memberships covered by Class 3.

<u>Class 3</u> deals with a system error in the game service system that causes duplicate memberships. According to Mr. Goldstein, Oberon has already located and isolated two system errors that cause this "duplicate membership" problem and traced the system errors to specific individuals who were affected by them. (**Goldstein Depo., 136:7-137:19, 138:20-139:4, 142:1-22.)** Oberon has gone as far as to issue unidentified refunds to the people to minimize its collateral damage. Thus, there is no merit to Oberon's argument that this Class cannot be determined in an "objective verifiable way."[1]

[1] Contrary to Oberon's assertion that this "bug has been fixed", the problem has not been resolved and continues to affect Oberon game service users. **(Goldstein Depo., 142:1-22.)**

Class 4 deals with a system billing error in the game service system. This system error causes Defendant's computer system to make unauthorized charges. For instance, one *manifestation* of this system billing error causes the wrong number of months to be billed to a user's account or causes the GameSaver subscription to be billed after cancellation. (**Goldstein Depo., 144:11-145:22.)** There is no merit to Defendant's position that there is no "objective, class-wide method" of determining why particular customers experienced the billing errors. Oberon has already identified and isolated one of the system billing errors and traced the error to specific individuals who incurred unauthorized charges to their accounts because of it. Mr. Goldstein testified to this particular fact at his deposition:

> Q: What did you do to run a fix for that?
>
> A: I don't know. The technical people did something. I don't know exactly how they did it, but they ran a program that determined which ones it had occurred with, and then they were able to refund the money automatically.

Thus, this class is based on objective criteria and can easily be determined by looking at Oberon's systems and records.

Class 5 deals with the Foreign Transaction Fee ("FTF"). Again the issue here is about Oberon's active concealment of the FTF from its users. In cases involving material fraudulent omissions, the element of reliance may be presumed. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972) (holding that where a case "involv[es] primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery;" rather, "[a]ll that is necessary is that the facts withheld be material," in the sense that a reasonable person "might have considered them important" in making his or her decision). Thus, class certification of a fraud claim is appropriate "if the plaintiffs allege that an entire class of people had been defrauded by a common course of conduct." *Plascencia v. Lending 1st Mortgage*, 259 F.R.D. 437, 447 (N.D.Cal.2009).

Here, Plaintiffs allege that Oberon's failure to disclose the FTF---the same omission to which all putative class members are exposed---form the basis for their claims, not any varying representations made on behalf of Defendant. Moreover, the fact finder in this case could find that the Foreign Transaction Fee was material because a reasonable person would want to know about all charges prior to signing up for the GameSaver membership and utilizing Defendant's online game service. Therefore, because Plaintiff is entitled to the presumption of reliance and Plaintiffs' fraud claim arises from a common course of conduct by Defendant, common issues will predominate. See e.g., *Lymburner v. U.S. Financial Funds, Inc*., 2010 WL 335791, *7 (N.D.Cal. 2010)

Class 6 deals with Oberon's enforcement of an illegal automatic renewal clause. The automatic renewal clause is included in every GameSaver contract and does not vary from person to person. Under this automatic renewal provision, every GameSaver subscription automatically renews at the end of the original term. This renewal is triggered without any timely written notice to Class Members "calling [their] attention" to that provision. The question of whether the automatic renewal is illegal under General Obligations Law § 5-903[2] is a question of fact and law common to all Class members.

Class 7 deals with a system-wide system error in the website that makes it difficult for users to cancel their GameSaver memberships. This user-interface defect is inherent in the game service website and there is no variation from person to person. Defendant argues that it is impossible to verify Class members' claims in an "objective" way that they couldn't cancel because of the user-interface defect.

[2] New York courts have stated that GOL §5-903 provisions concerning "service, maintenance or repair to or for any real or personal property" are "generously read in order that their scope will engage the variegated evil the statute was intended to meet." *Telephone Secretarial Service v. Sherman,* 284 N.Y.S.2d 384, 385-86 (N.Y.App.Div.1967) (automatic renewal provision in telephone answering service agreement is covered by GOL § 5-903).

This argument has no merit because Oberon maintains a *user flow database* that shows a "page-by-page flow or map of the pages that user sees when he subscribes to [the] Game Saver program." (Goldstein Dep., 16:10-13.) Oberon also maintains a separate *events database* to keep track of "information about particular events in a user account." (Goldstein Depo., 24:16-22.) These "objective" records will establish who tried to cancel and failed to do so because of the system errors.

**B. TYPICALITY**

**1. All Classes and Plaintiffs' NYGBL §349**

The fact that Plaintiffs do not reside in New York or that they did not purchase a game or sign up for GameSaver physically within New York is not relevant to the issue of whether New York's General Business Law §349 applies. *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (2002).[3] That depends on whether the "deception of a consumer" occurred in New York. *Ibid*. All that is required is that *some part* of the underlying unlawful transaction affecting them must occur in this state. *Id*., at 324; *People ex rel. Spitzer v. Telehublink Corp.*, 301 A.D.2d 1006, 1009 (2d Dept.2003). If some part of the deception occurred in New York, GBL §349 applies.

Here, Plaintiffs' GBL §349 claim is predicated on the allegation that Defendant actively concealed or suppressed information about the system errors, user-interface defects, and FTF from its customers. This omission is alleged to have led both in state and out-of state customers to buy games from Oberon and sign up

---

[3] The Defendant is plainly wrong to insist that Plaintiffs must be residents of New York and must have purchased a game or enrolled in GameSaver in New York. GBL §349 does not impose geographical restrictions upon the consumer complaints that properly serve as a basis for an enforcement action. As one court has already specifically noted, "the plain meaning of the language ... indicates that the Legislature intended that all consumers be protected from illegal practices regardless of their residency and that the Attorney-General of this State is mandated to take necessary action ... to protect all of these consumers." *People by Vacco v. Lipshitz*, 174 Misc.2d 571, 580, 663 N.Y.S.2d 468 (1997).

for the GameSaver membership without knowing about them. (FAC, ¶¶ 27, 28, 32, 56-62.) This deception is central to Plaintiffs' GBL §349 claim. See, *Bildstein v. MasterCard International, Inc*., 2005 WL 1324972, *4 (S.D.N.Y. 2005) (Omission-based claims under GBL §349 are appropriate "where the business alone possesses material information that is relevant to the consumer and fails to provide this information.")

In turning to the question of whether any part of that deception occurred in New York, the facts are undisputed that a major part of both the deception and transaction takes place in New York:

- All Terms of Use are written by the legal team in New York; (Goldstein, 30:19-21)
- Oberon's customer service department, which handles all communications with customers and all game service issues, is physically within New York; (Goldstein, 43:2-44:16)
- Oberon uses a New York phone number to receive inquiries relating to online game service issues; (Goldstein, 54:17-56:19)
- Oberon controls all payment transactions through a third-party payment processor, RBS Worldpay, from New York. Oberon directs RBS as to when and how much to charge each user's credit card. (Goldstein, 28:8-22). Thus, all transactions must first pass through New York.

Thus, all written materials and website pages relating to its deceptive Terms of Use are made in New York and sent out from New York. Also, Oberon's customer service department that handles all inquiries and communications with consumers is within New York. Also, Oberon uses a New York phone number to receive inquiries from consumers about its GameSaver program and online game service. *Mountz v. Global Vision Prods,* 3 Misc.3d 171 (2003) (telemarketing site and the receipt of Internet orders physically within New York State sufficient);.

*Telehublink*, 301 A.D.2d 1006 (2d Dept. 2003) (use of New York mailbox to send and receive correspondence relating to deceptive telemarketing scheme). Moreover, all payment transactions pass through the authorization system in New York.

**2. Classes 1 and 3.**

There is not any typicality argument raised by Defendant. Rather, Defendant argues that Plaintiff Williams cannot assert an unjust enrichment claim on behalf of Classes 1 and 3 because there is an express contract between her and Oberon. It is true that unjust enrichment "cannot lie where there exists between the parties a valid express contract covering the same subject matter." However, Defendant's argument fails to recognize that the system errors are not mentioned anywhere in the GameSaver contract. *Goldman v. Simon Property Group, Inc.*, 58 A.D.3d 208, 218-219 (2008). Thus, there is a question as to whether the system errors are within the subject matter of the contract. Also, there is a question as to whether the GameSaver contract is valid under N. Y. Civil Practice Law & Rules §4544[4], requiring a minimum type size for consumer transaction contracts. *Gulf Ins. Co. v. Kanen*, 13 A.D.3d 579, 580 (2004). As the *Goldman* court held:

> Although the existence of a valid and enforceable contract governing a particular subject matter generally precludes recovery in quasi contract ... *where there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue*, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract, and will not be required to elect his or her remedies.

*Goldman*, 58 A.D.3d at 218-219.

Aside from the unjust enrichment claim, all Classes implicate a breach of

---

[4] N. Y. Civil Practice Law & Rules §4544 states: The portion of any printed contract or agreement involving a consumer transaction or a lease for space to be occupied for residential purposes where the print is not clear and legible or is less than eight points in depth or five and one-half points in depth for upper case type may not be received in evidence in any trial, hearing or proceeding on behalf of the party who printed or prepared such contract or agreement, or who caused said agreement or contract to be printed or prepared.

contract claim. The question is whether Oberon's failure to prevent and disclose the system errors amounted to a breach of the implied warranty of good faith and fair dealing. See, *Goldman*, 58 A.D.3d at 218-219 (improper disclosure of dormancy fees); *Lonner v. Simon Property Group, Inc.*, 57 A.D.3d 100, 108 (2008) (terms of the fee disclosure unclear and hidden). More specifically, the following allegations underlie the breach of good faith and fair dealing claim: (1) Oberon failed to prevent and disclose the system errors (Classes 1 -4); (2) Oberon failed to disclose the FTFs (Class 5); and (3) Oberon failed to prevent and disclose the system error causing failure in GameSaver cancellation (Class 7); (4) Oberon failed to comply with the requisite notice requirement under N.Y. Gen. Obligs. Law §5-903 in enforcing the automatic renewal (Class 6.)

**3. Class 6**

Plaintiff Williams is also qualified to represent Class 6 (Automatic Renewal Class), because her original GameSaver account (not the duplicate membership) was never cancelled. Although she has not been charged since December of 2009 as a result of this lawsuit, her account is still active. In fact, Defendant has testified to this particular fact at deposition. (Goldstein Depo., 269:18-270:1.) Since the original 12-month term of her original account expired on March 23, 2010, it has automatically renewed per the GameSaver automatic renewal.

**4. Class 4: System Billing Error**

Class 4 is represented by Plaintiffs Parks. This class consists of individuals who were charged more or when they should not have as a result of the system billing error. One manifestation of this problem causes the system to charge a user when he downloads a free game on a free trial basis. This happened to Plaintiff

Parks. (Parks Decl., ¶6.)[5]

**5. All Classes and Plaintiffs' Claims for Injunctive Relief**

Plaintiffs Williams, Schutz, and Lindsey are all *current* GameSaver members. Plaintiffs Williams, McGregor, Schutz, Lindsey and Parks are all *current* users of the defendant's online game service. Defendant has acknowledged that the system error issues are continuing, and has not taken any action to notify its users and GameSaver members of the problem. **(Goldstein Depo., 246:19-248:4.)** In fact, when asked if Oberon has any intention of notifying its users of the system error issues, after having known about them for over a year, Defendant simply testified they haven't decided what they are going to do. **(Goldstein Depo., 246:19-248:4.)** Thus, all Plaintiffs have standing to bring a claim for injunctive relief.

**C. ADEQUACY**

To disqualify Plaintiffs Williams and McGregor as class representatives, Defendant resorts to revisionist history of what happened with respect to the parties' discovery. The complete history, along with several emails exchanged with counsel, is provided in the declaration of Jean-Paul Le Clercq. Plaintiffs offered to do the depositions on March 18 and 19, which Defense counsel rejected. Plaintiffs then offered to stipulate to extending the due date for Defendant's opposition by 3 days and do the depositions on March 18 and 19. Defendant again rejected March 18 and 19. Instead, Defendant chose to take the stipulation and move the deposition dates to March 22 and 23. Thus, Plaintiffs have always been ready and willing to attend their depositions, and have done so without any prejudice to Defendant.

More importantly, Defendant took Plaintiff Williams' deposition on March 23

[5] Plaintiffs acknowledge that the current class definition for Class 4 might be too narrow and inclusive and may not cover all manifestations of the system billing error. Plaintiffs will be asking for this Court's permission to amend the Class 4 definition in the final class certification order. The Court has discretion to amend the order granting class certification before final judgment. Fed.R.Civ.P. 23(c) (1)(C)

per their request, so there is no prejudice to Defendant.

## D. PREDOMINANCE

### 1. Common Questions Predominate

Here, a common nucleus of facts and potential legal remedies dominates this litigation. The common nucleus of facts focuses on the defendant's uniform course of conduct in the design and implementation of the online game system and in its failure to prevent and disclose the system errors, and resulting damages to Class members. Such common issues include, but are not limited to: (1) whether the defendant failed to prevent the system errors; (2) whether the defendant failed to disclose the system error issues; (3) whether the defendant engaged in deception by failing to prevent and disclose the system errors; (4) when the defendant knew about the system error issues and what actions have been taken to fix the issues and notify users; (5) whether the defendant failed to disclose information about the foreign transaction fee; and (6) whether the defendant enforced the automatic renewal without any prior notice to the class. In short, the defendants' uniform course of conduct is at the heart of the litigation.

Even though there may be differences in consumer protection laws from state to state, this is not necessarily fatal to a finding that there is a predominance of common issues among a nationwide class. As the Ninth Circuit has observed, state consumer protection laws are relatively homogeneous: "the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims" and do not preclude certification of a nationwide settlement class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-1023 (1998).

Moreover, courts have held that differences in state contract law do not defeat the predominance prong. *Steinberg v. Nationwide Mutual Ins. Co.*, 224 F.R.D. 67, 76 (E.D.N.Y.2004) (variations in state law of contracts did not preclude certification

where "claim is for the simple breach of a standard form contract and involves only the standard rules of contract interpretation."); *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 305 (E.D.N.Y.2006) ("most other district court cases from this circuit have declined to consider potential variation in state law among the plaintiffs' claims.")

Further, a state-by-state choice of law analysis has been rejected by numerous courts as a basis to strike nationwide class allegations. *In re Saturn L-Series Timing Chain Product Liability Litig.*, 2008 WL 4866604 (D.Neb. 2008)

**2. Choice of Law Clause Dictates that New York Law Applies.**

This class action is controlled by New York law based on a choice of law clause in the contract. In fact, Defendant has acknowledged in the joint Rule 26(f) that New York law controls this nationwide class action. In order to avoid the automatic application of New York law to a nationwide class, the defendant bears the "substantial burden" of showing that (1) a "true conflict exists" among the laws of the various states; that (2) "each state has an interest in applying its own law," and (3) if each state law has an interest, which state interest will be most impaired if its law is not applied. *Roberts v. Heim*, 670 F.Supp. 1466, 1493 (N.D.Cal.1987). The defendant hasn't met its burden.

Rather, in applying California's three step governmental interest test to choice of law questions, it is clear that New York law applies. See, *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir.1987). "Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law." *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir.2005). This applies to actions brought under the Class Action Fairness Act as well, since CAFA is based upon diversity jurisdiction. As the Ninth Circuit has explained:

> [F]irst, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction; second, if the laws do not differ, the

> court must determine whether a true conflict exists in that each of the relevant jurisdictions has an interest in having its law applied; and third, if more than one jurisdiction has a legitimate interest, the court must focus on the comparative impairment of the interested jurisdictions, seeking to identify and apply the law of the state whose interest would be the more impaired.

*Abogados v. AT & T*, 223 F.3d 932, 934 (9th Cir.2000).

Here, Defendant hasn't offered any evidence of significant variations in state consumer protection and deceptive trade practice laws, state contract laws, and state unjust enrichment principles. To the contrary, there is no question that New York has a substantial relationship to the parties and their transactions. As more fully discussed above, the deception occurred in New York and some part of the payment transaction passed through New York. Oberon is located in New York, and its customer service department, which handles all communications and inquiries with consumers, is located in New York. Oberon uses a New York phone number and address.

At issue is the second prong-whether application of New York law in the present case would be contrary to a fundamental policy of the State of California. Here, Defendant does not argue that application of New York law would *conflict* with any fundamental California policies in the statutes at issue. New York also has its own unfair business practices statute which prohibits deceptive and unfair business practices. *See* N.Y. Gen. Bus. Law § 349; *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F.Supp.2d 842, 862 (N.D.Cal.2000) ("the mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for not applying California law").

Dated: March 29, 2010

By:

/s/

RONALD W. MAKAREM
Attorney for Plaintiffs