|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | **PRIORITY SEND** |

### CIVIL MINUTES -- GENERAL

| Case No. | **CV 09-8764-JFW (AGRx)** | Date:  April 19, 2010 |
|---|---|---|

Title:     Blake R. Williams, et al. -v- Oberon Media, Inc., et al.

**PRESENT:**

   HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**     ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [filed 3/10/2010; Docket No. 32]

On March 10, 2010, Plaintiffs Blake R. Williams and Peggy J. McGregor filed a Motion for Class Certification.  On March 25, 2010, Defendant Oberon Media, Inc. ("Oberon") filed its Opposition.  On March 29, 2010, Plaintiffs Blake R. Williams and Peggy J. McGregor filed a Reply.

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's April 12, 2010 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Oberon sells video games, most of which can be purchased and downloaded online.  The games can be purchased at full price, or at a discounted price if the customer enrolls in the "GameSaver" membership plan, which is Oberon's multi-purchase discount program.  "GameSaver" members pay Oberon a monthly membership fee for a minimum term, and in exchange earn a discount from the retail price of video games they purchase, as well as one game at no additional charge for each month of their membership.

In their First Amended Complaint, Plaintiffs Blake R. Williams, Peggy J. McGregor, Candice K. Schutz, Mark Lindsey, and Barbara Jean Parks ("Plaintiffs")  allege: (1) due to an Oberon system error, Oberon fails to deliver monthly discounted games as promised and represented under the GameSaver membership plan; (2) due to an Oberon system error, Oberon signs up users for the GameSaver membership without their knowledge or consent; (3) due to an Oberon system error, Oberon improperly charges GameSaver members for a second GameSaver

subscription; (4) due to an Oberon system error, Oberon charges GameSaver members and other users multiple times for a single-game purchase; (5) Oberon fails to disclose in its GameSaver Membership Terms and Conditions or on the websites through which Oberon sells its games that users may incur a foreign transaction fee; (6) Oberon fails to obtain a member's express consent to an automatic renewal provision in the GameSaver Membership Terms and Conditions whereby a GameSaver subscription will "automatically" renew after the end of the initial subscription term until it is cancelled; and (7) due to a "user-interface problem," it is difficult for GameSaver members to cancel their subscription.

Plaintiffs primarily describe this action as a "class action under New York consumer protection laws" to remedy these alleged deceptive business practices.  First Amended Complaint ¶ 1.  Plaintiffs allege three claims for relief – violation of New York's General Business Law ("NYGBL") § 349, unjust enrichment, and breach of contract,[1] and seek to represent and certify the following seven nationwide classes under Federal Rule of Civil Procedure 23(b)(3):

**Class 1:** "Failure to Deliver Monthly Subscription Game" – GameSaver members who suffered injury due to Oberon's system error that causes failure to deliver monthly subscription games during the class period.

**Class 2:** "Signed-Up in Error" – GameSaver members who suffered injury as a result of an Oberon system error that signs up individuals as GameSaver members in error during the class period.

**Class 3:** "Duplicate Membership" – GameSaver members who were charged for a second GameSaver subscription because of Oberon's system error during the class period.

**Class 4:** "System Billing Error" – GameSaver members and other users who were billed multiple times for one purchase because of Oberon's system error during the class period.

**Class 5:** "Foreign Transaction Fee" – GameSaver members and buyers of Oberon games who incurred a foreign transaction fee during the class period.

**Class 6:** "Automatic Renewal Class" – Game Saver members whose GameSaver membership automatically renewed after the initial subscription term ended during the class period.

**Class 7:** "Unable to Cancel Class" – GameSaver members whose initial membership term ended but were unable to cancel their GameSaver membership because of a user-interface defect.

Each class is divided into two subclasses depending on whether damages or injunctive

---

[1]Plaintiffs allege all three claims for relief on behalf of Classes 1, 3, 4 and 5, and the NYGBL § 349 and unjust enrichment claims on behalf of Classes 2, 6 and 7.

relief is sought.

## II. LEGAL STANDARD

The party seeking to certify a class bears the burden of defining a sufficiently precise, objective, and presently ascertainable class, and demonstrating that the class meets the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Federal Rule of Civil Procedure 23(b). *Zinser v. Accufix Research Institute, Inc.*. 253 F. 3d 1180, 1186 (9th Cir. 2001), *as amended*, 273 F.3d 1266 (9th Cir. 2001); *O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 367 (C.D. Cal. 1997) (internal quotations omitted) ("A class definition should be precise, objective, and presently ascertainable."). Failure to carry this burden precludes the party from maintaining its complaint as a class action. *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).

Under Rule 23(a), a class action is only proper if:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. Proc. 23(a).

If the Rule 23(a) prerequisites are met, the next issue is whether certification is appropriate under Rule 23(b). Rule 23(b) authorizes certification if:

(1)   prosecuting separate actions by or against individual class members would create a risk of:

    (A)   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

    (B)   adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2)   the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3)   the court finds that the questions of law or fact common to class members

>predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>(A) the class members' interest in individually controlling the prosecution or defense of separate actions;
>
>(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Federal Rule of Civil Procedure 23. *Zinser v. Accufix Research Institute, Inc.*. 253 F. 3d 1180, 1186 (9th Cir. 2001), *as amended*, 273 F.3d 1266 (9th Cir. 2001). At this stage of the proceedings, the Court must accept the factual allegations in the complaint as true. *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975). However, the Court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.1992) (internal quotation marks omitted).

## III. DISCUSSION

### A. Several of Plaintiffs' Proposed Class Definitions Are Not Precise, Objective, or Presently Ascertainable.

As a preliminary matter, in determining the appropriateness of class certification, the Court must consider Plaintiffs' proposed class definitions. "The identity of class members must be ascertainable by reference to objective criteria." *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2010 WL 1286478, at *6 (N.D. Cal. Mar. 28, 2010) (quoting 5 James W. Moore, *Moore's Federal Practice*, § 23.21[1]). The class definition "should be precise, objective, and presently ascertainable." *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). "A class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2010 WL 1286478, at *6 "However, the class need not be 'so ascertainable that every potential member can be identified at the commencement of the action.'" *O'Connor*, 184 F.R.D. at 319 (quoting 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1759 at 117 (1986)).

Plaintiffs have failed to demonstrate that Classes 1, 2, and 7 are precise, objective and presently ascertainable, and thus certification of these classes is inappropriate. With respect to Class 1, although Oberon maintains records of the GameSaver members who redeemed games

through their GameSaver accounts, Oberon does not have a record of GameSaver members who have allegedly been *unable to* or had *difficulty* redeeming games from its system due to a system error.[2]  Goldstein Decl. ¶ 7.  As a result, in order to determine which GameSaver members were unable to or had difficulty redeeming games from Oberon's system due to a system error as opposed to GameSaver members who have forgotten or chosen not to redeem their games, the Court would have to rely on the subjective statements of each individual GameSaver member.  Moreover, even if it were possible to isolate those GameSaver members who attempted to but were unable to redeem a game, it would not be administratively feasible for the Court to determine which of those GameSaver members were unable to do so because of an Oberon system error as opposed to faulty internet connections, incompatible browsers, improperly set security settings, operating system malfunctions, or user errors.  Accordingly, Class 1 is not precise, objective, and presently ascertainable.

With respect to Class 2, Oberon is not aware of any method that would allow it to track GameSaver members who were signed up as a GameSaver Member due to an Oberon system error.  Goldstein Decl. ¶ 8.  As a result, the Court would have to rely on the subjective statements of each individual customer to determine whether they intended to sign up as a GameSaver Member.  Accordingly, Class 2 is not precise, objective, and presently ascertainable.

With respect to Class 7, there is no objective evidence which would allow the Court to determine which GameSaver members were unable to cancel their memberships due to a system user-interface defect, in contrast to those customers who decided not to cancel their memberships or simply never attempted to do so.  *See* Goldstein Decl. ¶ 13.  Plaintiffs claim that the Court would be able to determine which GameSaver members were unable to cancel their memberships because (1) Oberon maintains a user flow database that shows a "page-by-page flow or map of the pages that a user sees when he subscribes to our GameSaver program" (*see* Goldstein Depo. 16:10-13, Feb. 24, 2010); and (2) Oberon also maintains a separate events database which keeps track of information about particular events in a user's account (*see* Goldstein Depo. 24:16-22).  However, it is clear from Mr. Goldstein's deposition testimony that the user flow database displays the pages that a user sees when he *subscribes* as a GameSaver member, not when he cancels or attempts to cancel such membership.  Moreover, Mr. Goldstein only testified that the events database records when a user subscribes as a GameSaver member and when the user purchases an additional game at the GameSaver member price.  Accordingly, there is no basis to conclude that the user flow database or events database provide any information or identification of those users who may have unsuccessfully attempted to cancel a GameSaver membership.  Thus, the Court would have to rely on the subjective statements of each customer that they attempted to

---

[2] Plaintiffs argue that Mr. Goldstein testified in his deposition that Oberon's "technical people" isolated the system error and ran a program that determined which individuals were affected by it, citing Goldstein Depo. 144:11-145:22, Feb. 24, 2010.  This deposition testimony was not accepted for filing because Plaintiffs failed to properly file it under seal.  Even if the Court were to consider this testimony, it does not support the Plaintiffs' contention with respect to Class 1.  According to the testimony, Oberon was able to isolate those customers who were billed for more months than the customer's subscription period, which does not fall within the definition of Class 1.  With respect to Class 1, on the other hand, Mr. Goldstein testified that Oberon has had "trouble isolating" the system bug.  Goldstein Depo. 142:10-143:12.

cancel, but were unable to do so due to a system user-interface defect. Accordingly, Class 7 is not precise, objective, and presently ascertainable.

### B. Plaintiffs Fail to Satisfy the Typicality and Adequacy Requirements of Rule 23(a)(3) and (a)(4).

Pursuant to Rule 23(a)(3), typicality exists when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998). "Although the claims of the purported class representative need not be identical to the claims of other class members, the class representative 'must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Lymburner v. U.S. Financial Funds, Inc.*, 263 F.R.D. 534, 540 (N.D. Cal. 2010) (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)). To assess whether or not the representative's claims are typical, the Court examines "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (*quoting Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985)). In addition, "class certification is inappropriate where the putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* (citing cases).

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To satisfy constitutional due process concerns, "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (citing *Hansberry v. Lee*, 311 U.S. 32, 42-3 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). This adequacy requirement tends to merge with the typicality requirement, although the adequacy requirement also raises concerns about the competency of class counsel and conflicts of interest. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

### 1. The named Plaintiffs do not have a cognizable NYGBL § 349 claim, and thus do not satisfy the typicality and adequacy requirements with respect to this claim.

Plaintiffs' First Amended Complaint alleges a claim for violation of NYGBL § 349 on behalf of *all* seven classes. However, the named Plaintiffs do not have a cognizable NYGBL § 349 claim, and thus cannot satisfy the typicality and adequacy requirements with respect to this claim.

NYGBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." NYGBL § 349  To qualify as a prohibited act under NYGBL § 349, "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mutual Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 (N.Y. 2002).

"To apply the statute to out-of-state transactions . . . would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of [NYGBL] § 349." *Id.* at 1196.  NYGBL § 349 "was not intended to police the out-of-state transactions of New York companies. . . ." *Id.*

Plaintiffs argue that their transactions with Oberon occurred in New York because: (1) All terms of use are written by Oberon's legal team in New York; (2) Oberon's customer service department, which handles all communications with customers and all game service issues, is located in New York; (3) Oberon provides a New York phone number for its customers to report online game service issues; and (4) Oberon controls all payment transactions through a third-party payment processor located in New York.  However, these facts are insufficient to bring the alleged deceptive conduct within the purview of NYGBL § 349.  *See Goshen*, 774 N.E.2d at 1195, 1196 ("hatching a scheme" or "originating a marketing campaign" in New York insufficient where the plaintiff received the allegedly deceptive information, made his purchase, and paid his premiums in Florida);  *Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 907-908 (N.D. Ill. 2008) (allegations that defendant had its primary place of business in New York, that defendant contacted plaintiff and other class members from its headquarters in New York, and that defendant maintained a call center in New York insufficient, and finding deception occurred in Illinois where plaintiff received the deceptive information).

Here, based on the undisputed facts, the Court concludes that the named Plaintiffs' transactions did not occur in New York.  Plaintiffs are not New York residents and none of them allege that they purchased or downloaded videogames from Oberon in New York, enrolled as a GameSaver member in New York, or otherwise transacted business with Oberon in New York.  Thus, because the named Plaintiffs have no cognizable claim under  NYGBL § 349, a claim which they assert on behalf of all seven classes, they have not suffered the same injury as other class members, will be subject to unique defenses which threaten to become the focus of the litigation, and will not fairly and adequately represent the interests of the class.  Accordingly, they do not meet the typicality and adequacy requirements with respect to the NYGBL § 349 claim.  *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1020 (9th Cir. 2003) (finding that class is "inadequately represented" where the class's sole named plaintiff has no cognizable claim and has no Article III standing).

> **2.    Plaintiffs do not satisfy the typicality or adequacy requirements with respect to Class 4.**

In order to satisfy the typicality or adequacy requirements, Plaintiffs must be members of the class they seek to represent.  *Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 523 (W.D. Wash. 2008) ("Class membership is a minimal prerequisite to a finding of typicality."; *see also Solis v. Regis Corp.*, 2006 WL 2925682, at *8 (N.D. Cal. Oct. 12, 2006) ("Because Plaintiff is not a member of the putative . . . class, she is neither a typical nor an adequate representative of that class.").  Here, no named plaintiff is a member of Class 4 – users who were billed multiple times for a "purchase" due to an Oberon system error.  *See* First Amended Complaint ¶ 46; Motion, p. 18.

In their moving papers, Plaintiffs state that Class 4 is represented by Plaintiff Schutz, but in their Reply, state that Class 4 is represented by Plaintiff Parks.  However, neither of these Plaintiffs

are members of Class 4.  Plaintiff Schutz was billed multiple times for her GaveSaver subscription, not for a single-game purchase.  *See* Motion p. 18 (clarifying that "purchase" in the class definition means a single-game purchase).  Likewise, Plaintiff Parks was not billed multiple times for a single-game purchase – instead, she allegedly experienced other billing issues, including, being charged for a GameSaver subscription she did not order and being charged for 4 games offered on a free-trial basis.  Accordingly, because Plaintiff Parks and Plaintiff Schutz are not members of Class 4, they do not satisfy the typicality or adequacy requirements with respect to Class 4.

### 3. Plaintiffs do not satisfy the typicality or adequacy requirements with respect to Class 6.

Class 6 consists of members whose GameSaver membership automatically renewed after the initial subscription ended during the class period.  Plaintiff Williams is the only named Plaintiff seeking to represent Class 6.  However, Williams enrolled as a twelve-month GameSaver member on March 23, 2009, and all charges to her account ceased on December 2, 2009 in response to this lawsuit.  Accordingly, she never completed her subscription term, and her membership never "renewed."  Plaintiffs' claim that Williams' membership automatically renewed based on Mr. Goldstein's testimony that Ms. Williams technically owes Oberon for the remaining monthly dues on her twelve-month subscription is frivolous, and moreover, even if her membership somehow automatically renewed after her subscription was frozen by Oberon, her claims certainly are not typical of the claims of Class 6.  It is highly unlikely that any other class member's subscription was automatically renewed under such unique circumstances.

Accordingly, Plaintiff Williams' claims are not typical of the claims asserted on behalf of Class 6, nor will Plaintiff Williams adequately protect the interests of Class 6's absent class members.

### 4. Plaintiffs do not satisfy the typicality or adequacy requirements with respect to Class 7.

According to Plaintiffs' moving papers, all named Plaintiffs seek to represent Class 7, which includes GameSaver members "whose initial membership term ended but were unable to cancel their GameSaver member[ships] because of a user-interface defect."  First Amended Complaint, ¶ 46.  However, the only plaintiff who satisfied her initial membership term is Plaintiff McGregor, as Plaintiffs Schutz's and Lindsey's twelve-month memberships began less than a year ago, and neither Plaintiff Parks nor Williams remained paying members for their full twelve-month terms.  However, Plaintiff McGregor does not allege that she was unable to cancel her account, nor does she allege she was prevented from doing so because of a "user-interface" defect.  Indeed, Plaintiff McGregor does not even seek to represent Class 7 according to her declaration.  *See* McGregor Decl. ¶ 7.

Accordingly, because no named plaintiff is a member of Class 7, Plaintiffs fail to satisfy the typicality or adequacy requirements with respect to Class 7.

### C. Individual Issues Predominate over Common Questions of Fact and Law.

Plaintiffs seek to certify the seven classes under Federal Rule of Civil Procedure 23(b)(3). A class may be certified under Rule 23(b)(3) if a court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Proc. 23(b)(3). "[T]o meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof.'" *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001); *see also Jiminez v. Domino's Pizza, Inc.,* 238 F.R.D. 241, 251 (C.D. Cal. 2006) ("The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") (internal quotation omitted). A Rule 23(b)(3) action is inappropriate where "the main issues in a case require the separate adjudication of each class member's individual claim or defense." *Zinser*, 253 F.3d at 1189.

Plaintiffs fail to demonstrate that common questions of law or fact predominate with respect to any of the proposed seven classes. For example, Plaintiffs describe this action primarily as a "class action under New York consumer protection laws . . . ." First Amended Complaint ¶ 1. Indeed, in their First Amended Complaint, Plaintiffs allege a claim for violation of NYGBL § 349 claim on behalf of all seven classes. However, as discussed, in order to qualify as a prohibited act under NYGBL § 349, "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mutual Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 (N.Y. 2002). Thus, the Court would be required to conduct an inquiry into each class member's individual transactions with Oberon to determine if that class member was deceived in New York and can therefore properly allege a viable NYGBL § 349 claim. *See, e.g., DeFillipo v. Mutual Life Ins. Co. of New York*, 787 N.Y.S.2d 11, 14 (N.Y. App. Div. 2004) (decertifying class on grounds that plaintiffs' NYGBL § 349 claim "would require individualized inquiries into the conduct of defendants' sales agents with respect to each individualized purchaser" and thus common questions of law or fact would no longer predominate over questions affecting only individualized members.).

Moreover, recognizing that the Court might conclude that the deception did not occur in New York as to all class members, Plaintiffs allege that Oberon's conduct violated the "substantially similar laws of other states." See First Amended Complaint ¶ 54. However, Plaintiffs fail to identify which "substantially similar laws of other states" they contend apply, and do not demonstrate that common questions would predominate with respect to any potential claims under such laws. To determine which other non-forum states' laws to apply, the Court is required to perform a choice of law analysis and evaluate whether the deceptive practices law in each potentially concerned state differs from California law, whether *each* state has an interest in having its law applied, and whether *each* state has an interest outweighing California's interest:

> [T]he three-part California choice of law inquiry requires comparison of each non-forum state's law and interest with California's law and interest *separately*. As required by California law, [the plaintiff] thus must apply California's three-part conflict test to *each* non-forum state with an interest in the application of its law. Also, because [the plaintiff] seeks certification of three separate claims . . . this conflicts test must be applied to *each* claim upon which certification is sought.

*See Zinser*, 253 F.3d at 1188 (internal quotations and citations omitted).

Each of the fifty states has an interest in the application of its law to its residents, and Plaintiffs fail to make any attempt to demonstrate that Cal. Bus. & Prof. Code § 17200, NYGBL § 349 and the "substantially similar laws of other states" do not have material differences. Deceptive trade practices acts and consumer protection laws do indeed differ in some respects from state to state. *See, e.g., In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139, 154-55 (S.D.N.Y. 2008) (internal citations omitted) ("[B]ecause reliance is an element of consumer fraud in some states, the alleged uniformity of the defendants' fraudulent conduct is insufficient, on its own, to justify a finding of predominance."); *Utility Consumers' Action Network v. Sprint Solutions,* Inc., 259 F.R.D. 484, 487 (S.D. Cal. 2009) (declining to certify a nationwide class under 23(b)(3), noting that California consumer protection laws are among the strongest in the country). While "[v]ariations in state law do not necessarily preclude a 23(b)(3) action, . . . class counsel should be prepared to demonstrate the commonality of substantive law applicable to all class members." *Hanlon v. Chrysler* Corp., 150 F.3d 1011, 1022 (9th Cir. 1998). Here, Plaintiffs utterly fail to demonstrate the commonality of substantive law applicable to all class members with respect to claims under these unidentified "substantially similar laws of other states," and accordingly have failed to meet their burden that common issues of law and fact predominate as to these claims. *See Sweet v. Pfizer*, 232 F.R.D. 360, 372 (C.D. Cal. 2005) (finding that plaintiffs failed to show common questions predominated, stating "not only have Plaintiffs failed to conduct an in-depth choice of law analysis showing that the case would be manageable as a class action, but they never even suggest which state laws should apply"); *Drizin v. Sprint Corp.*, 785 N.Y.S.2d 428, 429-30 (N.Y. App. Div. 2004) (trial court properly declined to certify a nationwide class under NYGBL § 349, concluding that potential class members from outside of New York would be left with no viable claim under the statute, and "[m]aintenance of a nationwide class action on these claims would also be unmanageable inasmuch as the trier of fact would be required to engage in the task of distilling the laws of the 50 states.").

Furthermore, Plaintiffs also fail to demonstrate that common issues predominate with respect to their unjust enrichment claim. For users who did not agree or are not bound by the GameSaver Membership Terms and Conditions containing the New York choice-of-law provision, including members of Class 2, 4, and 5,[3] the Court must again engage in a choice-of-law analysis to determine (1) whether the unjust enrichment law of each potentially concerned state materially differs from the unjust enrichment law of California, (2) whether *each* state has an interest in having its unjust enrichment law applied, and (3) whether *each* state has an interest outweighing California's interest in having its unjust enrichment law applied. As the party seeking to invoke the law of a jurisdiction other than California, Plaintiffs bear the burden of showing that the law of that jurisdiction applies to their unjust enrichment claim. *See Zinser*, 253 F.3d at 1187. However, Plaintiffs fail, as required by California law, to apply California's three-part conflict test to *each* non-forum state with an interest in the application of its law, and thus fail to establish that the law of a single state applies to this action. *See id.* at 1188. Indeed, the law of unjust enrichment differs from state to state, and Plaintiffs have not met their burden of demonstrating that any such differences are immaterial or manageable. *See Rivera v. BioEngineered Supplements & Nutrition, Inc.*, 2008 WL 4906433, at *2-4 (C.D. Cal. Nov. 13, 2008) (declining to certify an unjust enrichment class because there were material conflicts between California's law of unjust enrichment and the

---

[3]The parties agree that New York law applies to GameSaver members who agreed to the GameSaver Membership Terms and Conditions.

laws of other states, and the plaintiff failed to show that the differences in law were manageable).

Finally, with respect to the remainder of each of the class claims, Plaintiffs fail to demonstrate that common issues predominate. For example, with respect to Class 5, which includes Game Saver members and buyers of Oberon games who incurred a foreign transaction fee, Oberon sells its videogames through dozens of different websites, and the content and format of those websites varies from website to website and are changed over time. Goldstein Decl. ¶ 17. At one time, for instance, Oberon disclosed on several websites that transactions were processed through an international Oberon entity located in Nicosia, Cyprus. On other websites and at different times, Oberon informed its customers that "transactions may be processed through a non-U.S. bank," and that certain credit companies may deem the purchase "a cross-border transaction." *Id.* at ¶ 17-19. Given these significant differences, the claims asserted on behalf of this class would be unmanageable because the Court would have to engage in a customer-by-customer inquiry to determine which disclosures on which websites at which times each member viewed.

As Oberon points out, the Court would also have to make other individualized determinations with respect to the claims asserted by Classes 1, 2, 3, 4, and 7. For example, an individualized customer-by-customer inquiry would be required to determine whether Oberon's acts or omissions, rather than some other factor, caused each customer's alleged harms, such as whether the customer entered incorrect log-in information or experienced a non-Oberon related computer or connection problem when trying to redeem a game (Classes 1 and 3), failed to read the language on the web pages during the enrollment process describing the Game Saver program or decided later that she did not want to be a member (Class 2), inadvertently submitted her payment information multiple times (Class 4), or forgot to cancel her membership (Class 7).

Accordingly, the Court finds that Plaintiffs have failed to demonstrate that common issues of fact or law predominate over any questions affecting only individual members, or that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs have failed to meet their burden in demonstrating that any of the proposed classes meets the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Federal Rule of Civil Procedure 23(b). Accordingly, Plaintiffs' Motion for Class Certification is **DENIED.**

IT IS SO ORDERED.